[No. B209735. Second Dist., Div. Six. Nov. 4, 2009.]

RONALD SIMANDLE et al., Plaintiffs, Cross-defendants and Appellants, v. VISTA DE SANTA BARBARA ASSOCIATES, LP, Defendant, Cross-complainant and Respondent.

---

**COUNSEL**

Martin Cohen & Associates and Dennis Shea for Plaintiffs, Cross-defendants and Appellants.

Hart, King & Coldren, Robert S. Coldren, Robert G. Williamson, Jr., and Daniel T. Rudderow for Defendant, Cross-complainant and Respondent.

---

**OPINION**

**YEGAN, J.**—Ronald Simandle and Warren Simandle appeal from a judgment entered after the trial court found that appellants abandoned a statutory right under the Mobilehome Residency Law (Civ. Code, §§ 798, 798.78, subd. (a)) to sell their parents' mobilehome at the Vista de Santa Barbara Mobilehome Park.[1] The trial court ruled that park owner, respondent Vista de Santa Barbara Associates, LP, could remove the mobilehome at appellants' expense. (§ 798.78, subd. (b).)

█ Appellants argue, inter alia, that the law abhors a forfeiture. This is true but the law also abhors a public and private nuisance which, in this case, lingered for months on end. (Civ. Code, §§ 3479–3481; Code Civ. Proc., § 731.) "Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it." (Civ. Code, § 3483.) We affirm.

█ The Mobilehome Residency Law (MRL; Civ. Code, § 798.78, subd. (a)) provides that an heir who gains ownership of a mobilehome in a mobilehome park through the death of the tenant-mobilehome owner, has the

---

[1] All statutory references are to the Civil Code unless otherwise stated.

Respondents argue that the appeal is moot because the mobilehome has been removed and the park space has been rented to a new tenant. These developments do not moot the judgment for damages. "[A]n appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination. This qualification or exception has been applied to actions for declaratory relief upon the ground that the court must do complete justice once jurisdiction has been assumed [citation], and the relief thus granted may encompass future and contingent legal rights." (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].)

right to sell the mobilehome in situ providing the homeowner's rent, utilities and maintenance obligations arising after the homeowner's death are satisfied until the mobilehome is sold.[2] (See Friedman, Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2008) ¶ 11:260, pp. 11-75 to 11-76 (rev. # 1, 2005); 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 782, p. 911.) Section 798.78, subdivision (b) states in pertinent part: "In the event that the heir . . . does not satisfy the requirements of subdivision (a) with respect to the satisfaction of the homeowner's responsibilities and liabilities to the management which accrue pursuant to the rental agreement in effect at the time of the death of the homeowner, the management shall have the right to require the removal of the mobilehome from the park." Thus, appellants, and persons similarly situated, have a valuable right. But, like other rights, this right can be forfeited.

## Facts and Procedural History

In 2005, appellants (brothers) inherited their parents' mobilehome located at Vista de Santa Barbara Mobilehome Park, space 35, Carpinteria. Brothers quarreled over the inheritance and let the vacant mobilehome fall into disrepair.

Brothers decided to sell the mobilehome and requested that park manager Ruth Bevington inspect it. In a December 5, 2005 letter, Bevington listed what repairs had to be done before the mobilehome could be put on the market.

Brothers did some yard work but failed to correct the deficiencies set forth in Bevington's letter. Bevington testified that the mobilehome and park space were in "really bad" shape. The mobilehome had a broken window, a rotted fence, steps in disrepair, debris and combustible material, a filthy brown ooze running down the front and side of the home, and smelled of sewage.

At Bevington's request, Nick Alexakis of California's Department of Housing and Community Development (HCD) inspected the mobilehome. Alexakis issued a September 16, 2006 report, citing the mobilehome owner

---

[2] Section 798.78, subdivision (a) provides: "An heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death shall have the right to sell the mobilehome to a third party in accordance with the provisions of this article, but *only if all the homeowner's responsibilities and liabilities to the management regarding rent, utilities, and reasonable maintenance of the mobilehome and its premises which have arisen since the death of the homeowner have been satisfied* as they have accrued pursuant to the rental agreement in effect at the time of the death of the homeowner up until the date the mobilehome is resold." (Italics added.)

for Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.)[3] violations: a rotted deck, steps, and guardrails; a bent carport awning column; a blocked exit door; combustible material behind a shed within three feet of the rear lot line; and electrical code violations.

Brothers fixed the code violations but again failed to repair the problems listed in Bevington's letter. On October 19, 2006, respondent served a seven-day "Notice To Correct[] Violations of Rental Agreement or Surrender Possession." (§ 798.56, subd. (d).) When no corrective action was taken, respondent served a 60-day notice to terminate the tenancy and remove the mobilehome from the park. (§§ 798.55–798.77.)

Brothers sued for declaratory relief and damages. Respondent filed a cross-complaint for trespass, ejectment (removal of the mobilehome) and declaratory relief.

Michael Cirillo, a mobilehome park expert, testified that the mobilehome was not habitable, had a market value of $13,806, and required $30,000 in repairs before it could be sold. He photographed the mobilehome, which showed a wide assortment of electrical, drainage, roof, plumbing, and maintenance problems.

The trial court concluded that any right to sell the mobilehome in the park hinged on brothers' statutory duty to maintain the home in accordance with park rules and the MRL. (§ 798.78, subd. (a).) It found that brothers had ample opportunity to make repairs but did "literally nothing for over a year to protect and secure their rights in the mobile home space. They had been provided the park rules as well as a copy of the [M]obilehome [R]esidency [L]aw. Their failure to read, let alone abide by the rules, is the source of their loss, not any action by the park." The trial court awarded respondent $400 a month rent plus attorney fees and authorized the removal of the mobilehome at brothers' cost and expense. Brothers filed a notice of appeal about a month after respondent moved the mobilehome out of the park.

## Estoppel

Brothers contend that repairs were made, estopping respondent from claiming that brothers no longer had the right to sell the mobilehome in the park. In November 2006, HCD reported that all the code violations had been corrected.

---

[3] The Mobilehome Parks Act was enacted to "[a]ssure protection of the health, safety, and general welfare of all mobilehome park residents" (Health & Saf. Code, § 18254, subd. (a)(1).) Under the act, HCD promulgates and enforces regulations governing the use, maintenance, and occupancy of mobilehomes. (Health & Saf. Code, § 18207; Cal. Code Regs., tit. 25, § 1000 et seq.; see *Sequoia Park Associates v. County of Sonoma* (2009) 176 Cal.App.4th 1270, 1281 [98 Cal.Rptr.3d 669].) "Title 25" regulations are the equivalent of the Uniform Building Code.

 Although brothers corrected the code violations, most of the maintenance problems listed in Bevington's December 2005 letter were not fixed. It was uncontroverted that the mobilehome was in disrepair for quite some time and remained so at trial. The trial court reasonably concluded that correction of the code violations did not estop respondent from seeking an order to remove the mobilehome. Mobilehome Parks Act remedies to correct code violations are cumulative and do not restrict "any remedy, provisional or otherwise, provided by law . . . ." (Health & Saf. Code, § 18423.)

Brothers claim that respondent waited too long to bring the ejectment action but there was no laches bar. The trial court found that respondent "acted with restraint in permitting two warring brothers over a year to decide what they wished to do with the one remaining, declining asset left to them upon the death of their parents. They gave ample opportunity for the brothers to take responsibility for the care of the home, giving several notices prior to the critical notice of termination of October 26, 2006. The fact that the [seven-day] notice of violation and the notice of termination came so closely together in time is of little significance, for the Simandles had done literally nothing for over a year to protect and secure their rights in the mobilehome space." This finding is supported by the record.

*Waiver*

 Brothers claim that respondent, in serving the 60-day notice of termination, waived any right under the MRL to remove the mobilehome. The MRL, however, requires that a park owner serve the 60-day notice before removing a mobilehome.[4] (§ 798.55, subd. (b)(1); Friedman, Cal. Practice Guide: Landlord-Tenant, *supra*, ¶ 11:150, p. 11-55 (rev. # 1, 2007).) Here the notice stated: "you must remove your mobilehome from the Park on or before December 25, 2006. If you fail to do so, legal proceedings will be commenced against you to recover possession of the space you occupy in the mobilehome park and to recover a judgment for damages for each day you continued to occupy the space beyond the sixty (60) day period."

Brothers had no right to maintain a park nuisance. (See § 798.88; Friedman, Cal. Practice Guide: Landlord-Tenant, *supra*, ¶ 11:277.12, p. 11-80.3 (rev. # 1, 2005).) Respondent's managing general partner, David Robbins, testified

---

[4] The seven-day notice was served before the 60-day tenancy termination notice. (§ 798.56, subd. (d).) "This seven-day notice of opportunity to 'cure' is independent of the 60-day notice requirement: i.e., if a cure is not timely effected, management may follow-up with a 60-day notice to terminate. [¶] The [MRL] does not authorize *concurrent* service of both notices. Thus, management must wait the *full* seven days before serving the 60-day termination notice." (Friedman, Cal. Practice Guide: Landlord-Tenant, *supra*, ¶ 11:167, p. 11-58.1 (rev. # 1, 2006).)

that the mobilehome was "dilapidated, [and] unkempt. . . . It was filthy outside. The inside was a wreck . . . [and] [t]here was an abandoned car out in front and debris."

█ Nor was there an express or implied waiver of respondent's statutory right to remove the mobilehome. (See, e.g., § 798.77 [waiver of MRL in rental or sale agreement is void and contrary to public policy]; Friedman, Cal. Practice Guide: Landlord-Tenant, *supra*, ¶ 11:235, p. 11-68 (rev. # 1, 2007).) The MRL, which regulates sales and transfers of mobilehomes in parks, is intended to protect management, homeowners, purchasers, and park residents. (*SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.* (2007) 148 Cal.App.4th 663, 673–674 [56 Cal.Rptr.3d 79].)

### *Settlement Letter*

Brothers argue that the trial court erred in not considering a November 28, 2006 settlement letter entitled "CONFIDENTIAL SETTLEMENT COMMUNIQUE." The letter stated that respondent would consent to "transfer" (i.e., sale) of the mobilehome "contingent upon" brothers making the necessary repairs.

After the trial court granted an in limine motion to exclude evidence of settlement discussions, brothers questioned HCD Inspector Alexakis about the letter. The trial court ruled that the letter was subject to the in limine order. Similar objections were sustained when brothers offered the settlement letter as a party admission.

█ It is well established that statements made during settlement negotiations are not admissible to show liability. (Evid. Code, § 1152, subd. (a); *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 13 [151 Cal.Rptr. 323, 587 P.2d 1136].) Brothers' reliance upon *Moving Picture etc. Union v. Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395 [86 Cal.Rptr. 33] is inapposite and holds that an admission made independent of a settlement negotiation may be admissible. (See Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2009) § 36.17, p. 866.)

Brothers contend that the settlement letter was admissible to show Bevington's bias and prejudice as an adverse witness. (See, e.g., *Moreno v. Sayre* (1984) 162 Cal.App.3d 116, 126 [208 Cal.Rptr. 444].) The trial court rejected the argument because the settlement letter was written by the park owner's attorney, not Bevington. The court found "a complete failure to produce one shred of evidence that [Bevington] acted inappropriately in seeking an inspection of a mobilehome which had, for all intents and purposes, been abandoned for over a year by the Simandle brothers."

Assuming, arguendo, that the trial court erred, it is not reasonably probable that appellants would have obtained a more favorable result had the letter been considered for impeachment purposes. (Evid. Code, § 354; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480 [69 Cal.Rptr.3d 273].)

## Conclusion

The judgment is affirmed. Respondent is awarded costs and attorney fees on appeal in an amount to be determined by the trial court on noticed motion. (§ 798.85; *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 951 [105 Cal.Rptr.2d 5].)

Gilbert, P. J., and Perren, J., concurred.