Filed 5/14/14  P. v. Corleto CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROLANDO ANTONIO CORLETO,<br><br>        Defendant and Appellant. | B248486<br><br>(Los Angeles County<br>Super. Ct. No. VA125062) |

        APPEAL from a judgment of the Superior Court of the County of Los Angeles, Dewey Lawes Falcone, Judge.  Affirmed.

        Liberty Bell Law Group, Michele H. Kendall; Law Offices of Christina DiEdoardo, Christina A. DiEdoardo for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant and appellant Rolando Antonio Corleto (defendant) was convicted of one count of lewd acts upon S.G., a child under the age of 14 (Pen. Code, § 288, subd. (a)[1]).  On appeal, defendant contends that the trial court erred in allowing S.G.'s mother to testify that S.G. told her defendant had kissed S.G.; in sustaining objections to certain evidence relating to defendant's attempt to mitigate the admissions he made to law enforcement because he made the admissions under duress by S.G.'s father; and in precluding defendant's counsel from asking defendant whether a detective "lied." Defendant also contends that the prosecutor engaged in misconduct by endorsing vigilante justice and that the jury had insufficient evidence to convict him had the above errors not occurred.  We affirm the judgment.

## BACKGROUND[2]

### A.    Factual Background

#### 1.    Prosecution Evidence

Defendant was a friend of M.G., S.G's. father.  S.G. testified that on May 27, 2012, when she was 13 years old, she and her family were at defendant's house for a party.  S.G. sat in a chair behind a couch where other people were sitting watching television.  Defendant came up behind S.G. and startled her.  Defendant leaned over S.G.'s body, looked at his cellular telephone that was charging on a table near S.G., and kissed S.G. "with [his] tongue."  S.G. testified that "at that same time" she was tired. Defendant asked her, "Do you want to go to my room to go lay down?," and S.G.

---

[1]    All statutory citations are to the Penal Code unless otherwise noted.

[2]    Because the jury acquitted defendant on the charge relating to a March 2012, incident (count 1), we only discuss the facts related to the May 27, 2012, incident (count 2) that is the subject matter of this appeal.

responded, "No, I'm okay." About 15 or 20 minutes earlier, defendant touched (a "constant touch" of) S.G.'s lower back. S.G. did not tell anyone that night what had occurred with defendant, but she asked mother, "[C]an we leave?"

S.G. testified that the following day, she sent defendant a text message from her cellular telephone asking him, "Why did you kiss me?," and defendant responded, "sweet lips" or "soft lips." Thereafter, defendant sent a text message to S.G. telling her to "[d]elete the messages because I don't want nobody to see them," and saying "how to delete text messages." S.G. ultimately deleted the text messages.

Mother testified that on May 28, 2012, she noticed text messages appearing on her phone, through an application that allowed her to see text messages sent and received by S.G. on S.G.'s phone. The text messages were between defendant and S.G. The trial court sustained a hearsay objection by defendant's counsel concerning mother's testimony as to the content of the text messages. After seeing the text messages, mother told her mother-in-law, who was supervising S.G. while mother was at work, to "[t]ake [S.G.'s] phone away;" "don't let [S.G.] near the computer;" and mother would pick up S.G. after work.

Mother testified that she asked S.G. about the text messages, and she told mother "what had happened between her and [defendant] the day before where he had kissed her . . . ." Mother then took S.G. to the police station "to make a report."

On May 28, 2012, Los Angeles County Sheriff's Deputy Daren Jaramillo went to an address listed for a 911 "hang-up" telephone call. Prior to leaving the police station to respond to the 911 telephone call, Deputy Jaramillo learned that his partner, Los Angeles County Sheriff's Deputy Suzette Madrid, was taking a report at the counter of an incident involving a male who kissed a 13-year-old girl, the daughter of the male's friend.

Deputy Madrid testified that on May 28, 2012, she interviewed S.G. who said that defendant kissed her on two separate days; during one of the incidents defendant kissed

3

her on the cheek, and during the other instance defendant kissed her on the lips.[3] S.G. said that on May 27, 2012, "while at a pool party, [defendant] kissed her—pecked her on the lips and brushed his tongue across her lips while she was sitting on a chair, and then she stated that he was charging his cell phone next to her, and he continued to walk back and forth." Defendant asked her what she was doing and whom she was texting, and she told him that she was texting her boyfriend. S.G. stated that she felt defendant breathing on her neck while he was standing behind her; she was startled, turned towards defendant, "and that was when he kissed her" using his tongue. S.G. told Deputy Madrid that when S.G. asked defendant in a text message why he kissed her, defendant responded, "sweet lips." Defendant told S.G. to delete the messages and explained how to do that.

Mother testified that when she was initially interviewed by a female deputy sheriff, mother understood, and told the deputy, that defendant had kissed S.G. "on the cheek." Mother later asked S.G. whether "it was a regular kiss or was it like a tongue kiss, and [S.G.] confirmed that it was a tongue kiss." Mother then told the police defendant had "tongue kissed" S.G.

Deputy Jaramillo testified that upon his arrival at the address listed for the 911 "hang-up" telephone call, he was contacted by defendant, the resident at the address. Deputy Jaramillo asked defendant why he called 911 and hung up, and defendant responded that "the day before he had a party and he had kissed a 13-year-old girl and wasn't sure what to do." Defendant said that he kissed S.G., the daughter of his friend, on the lips. Defendant did not tell Deputy Jaramillo that he had talked with S.G.'s father.

Los Angeles County Sheriff's Detective Scott McCormick testified that on May 29, 2012, he interviewed defendant. The transcript of the interview was read to the jury.

---

[3]     Defendant was charged in count 1 concerning events that occurred on March 17, 2012, and he was charged in count 2 concerning events described in this section that occurred on May 27, 2012. S.G. was the victim in both counts 1 and 2. As discussed below, following trial, the jury found defendant not guilty on count 1 and guilty on count 2.

4

Defendant told Detective McCormick that he saw S.G. texting, he came up to her and said something to her that startled her, and S.G turned her head and "that's when it happened." Defendant said that he kissed S.G. but his tongue "never came out" when he did. Defendant said that he and M.G. were members of a "biker club, like social club."

During the interview, defendant demonstrated for Detective McCormick how he kissed S.G., and said there were two kisses. Defendant told Detective McCormick that defendant said "sweet lips" during the text message exchange with S.G. the day after the incident. Defendant told Detective McCormick that after he kissed S.G. he thought, "[O]h, dude, like, no. So then I just, you know—so then, from that day, I was, like, fuck, you know, I fucked up. I really fucked up." Defendant said that he regrets what happened and knows that it was wrong, and that the kiss he gave S.G. was "not a kiss towards a friend's daughter."

Detective McCormick testified that during the interview, "[Defendant] proceeded to show me how he kissed [S.G.]. And when he showed me, it was a slight open-mouthed kiss as he leaned into somebody to kiss them, and it appeared—the implication was his mouth was open and his tongue was out and may have brushed across her lips, but he was saying he didn't try to put it in her mouth." Mother told Detective McCormick that she saw an exchange of text messages between defendant and S.G., including a text message from defendant to S.G. saying "sweet lips." Detective McCormick opined that defendant said he "fucked up" during his recorded interview because "he kissed a 13-year old girl in a sexual way when he shouldn't have."

### 2. *Defendant's Evidence*

Defendant testified that the reason he called 911 was because S.G.'s father, M.G., "came over to my house with two individuals and told me I better turn myself in," and M.G. threatened him with physical harm if he did not do so. Defendant made the 911 telephone call on his cellular telephone, but the telephone call was interrupted because the battery in his cellular phone was not sufficiently charged; he did not "hang up."

5

Defendant testified that he approached S.G. as she was texting a message on her cellular telephone. He started to lean over to kiss S.G. on the cheek and she was startled. As a consequence, S.G. reflexively moved; defendant missed her cheek, and kissed S.G. on the corner of her mouth. Defendant said that in addition to that kiss, he kissed S.G. when she arrived at the party.

Defendant testified that when he texted "sweet lips" to S.G., it was the result of his phone "auto correcting" and providing those words. His phone had a cracked screen and he could not see the screen very well. Defendant's text message was in response to a text message from S.G. about why he kissed her. He was trying to type "K," for "Okay," then a space and then "sweetie," but the telephone automatically changed the content of the message to "sweet lips."

## B.    Procedural Background

The District Attorney of Los Angeles County filed an information charging defendant with two counts of lewd acts upon a child under the age of 14, in violation of section 288, subdivision (a) (counts 1 and 2 respectively). Following trial, the jury found defendant not guilty on count 1 and guilty on count 2. The trial court suspended defendant's sentence on count 2; placed defendant on probation for a period of three years with certain conditions, including that he serve six months in county jail; ordered defendant to pay various fees, fines and penalties; and awarded defendant custody credit.

## DISCUSSION

### A.    Hearsay Evidence

Defendant contends the trial court erred in allowing mother to testify that S.G. told her defendant had kissed S.G. We disagree.

*1.    Standard of Review*

"We review . . . evidentiary claims for abuse of discretion.  [Citations.]  'A trial court abuses its discretion when its ruling "fall[s] 'outside the bounds of reason.'" [Citation.]' [Citation.]"  (*People v. Sisneros* (2009) 174 Cal.App.4th 142, 151.)

*2.    Background Facts*

On May 28, 2012, mother noticed text messages appearing on her telephone, through an application that allowed her to see text messages on S.G.'s cellular telephone; the text messages were by and between defendant and S.G.  The prosecutor asked mother what did she do after she saw the text messages, and mother responded, "I asked [S.G.], my daughter, about the messages, . . . and she told me what had happened between her and [defendant] the day before where he had kissed her—."  At that point, defendant's counsel objected to the testimony on the grounds of hearsay, and the trial court overruled the objection.  Mother continued her testimony, stating, "So then I went ahead and took her to the police station to make a report."

*3.    Analysis*

a)    Forfeiture of Contention Based on Confrontation Clause

Defendant contends that the trial court erred in allowing into evidence inadmissible hearsay—mother's testimony that S.G. told her defendant had kissed her. Defendant, however, cites *Crawford v. Washington* (2004) 541 U.S. 36, at page 54, stating that under the confrontation clause of the Sixth Amendment to the United States Constitution, the testimonial statements of a witness is inadmissible unless the witness is unavailable to testify and defendant has an opportunity for cross-examination.  To the extent defendant is contending on appeal that the admission of the testimony was in violation of the confrontation clause of the Sixth Amendment to the United States Constitution, defendant forfeited that contention.  At trial defendant did not object to the testimony on the grounds it violated his constitutional right to confrontation.  Defendant

7

only objected to the evidence on the ground of hearsay. Defendant's confrontation clause claim is not preserved on appeal because he did not object to the admission of mother's testimony on that ground. (*People v. Riccardi* (2012) 54 Cal.4th 758, 801 [defendant forfeited his claims regarding the admissibility of evidence based on alleged federal confrontation clause and due process violations because "defendant expressed his objections purely on state law grounds, specifically under the Evidence Code, and made no mention of any confrontation clause or due process violations"].) Moreover, mother and S.G. both testified and were subject to cross-examination. There were not violations of the confrontation clause.

### b) Nonhearsay Purpose

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code § 1200, subd. (a).) Hearsay evidence generally is inadmissible. (Evid. Code § 1200, subd. (b); *People v. DeHoyos* (2013) 57 Cal.4th 79, 132.)

"Hearsay statements are only those 'offered to prove the truth of the matter stated.' [Citation.]" (*In re Clara B.* (1993) 20 Cal.App.4th 988, 997.) Statements that are otherwise inadmissible hearsay may be admitted for a nonhearsay purpose relevant to an issue in dispute. (*People v. Davis* (2005) 36 Cal.4th 510, 535-536; *People v. Turner* (1994) 8 Cal.4th 137, 189.) Evidence relevant "'to prove that the statement imparted certain information to the hearer and that the hearer, believing such information to be true, acted in conformity with that belief' is not hearsay because 'it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth of the matter asserted in the statement.' [Citation.]" (*People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.)

The evidence was relevant to mother's state of mind as to why she took S.G. to the police, regardless of the truth of the evidence. Defendant has not challenged the relevancy or prejudice of the evidence concerning the facts surrounding the mother and S.G. going to the police station. The testimony, therefore, was not inadmissible hearsay.

8

(Evid. Code, § 1200; *People v. Davis*, *supra*, 36 Cal.4th at pp. 535-536; *People v. Turner*, *supra*, 8 Cal.4th at p. 189.)  The trial court did not abuse its discretion in overruling defendant's hearsay objection.

### c)    Harmless Error

Even if the trial court erred by overruling defendant's objection to mother's testimony, the error was harmless.  (*Chapman v. California* (1967) 386 U.S. 18, 22, 24 [harmless beyond a reasonable doubt standard]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability of a more favorable result standard].)  As noted above, mother testified, over defendant's hearsay objection, that when mother questioned S.G. about the text messages, S.G. told mother that defendant kissed S.G. at the party.  There, however, was other evidence admitted during trial that S.G. said that defendant kissed her at the party.  S.G. testified that defendant kissed her "with [his] tongue."  Deputy Madrid testified that S.G. said defendant "used his tongue" when he kissed her, and mother testified that S.G. said that defendant gave S.G. a "tongue kiss."  There is also evidence that defendant told Deputy Jaramillo that defendant kissed S.G. on the lips, and during defendant's interview with Detective McCormick defendant said he kissed S.G. twice.

### B.    Exclusion of Testimony Relating to Defendant's Attempt to Mitigate Admissions He Made to Law Enforcement

Defendant contends that the trial court abused its discretion in sustaining objections to certain testimony relating to his attempt "to mitigate the admissions [he] made to law enforcement" because he made them under duress from, or coercion by, M.G.  We disagree.

### 1.    Background Facts

The following exchange occurred at trial during mother's cross-examination:  "[Defendant's counsel:]  Is your husband in a motorcycle gang?  [¶]  [Prosecutor:]

9

Objection— [¶] [Mother:] No. [¶] [Trial court:] The objection is sustained. The answer is stricken."[4]

During defendant's direct testimony, the following exchange occurred: "[Defendant's counsel:] You stated that there was a reason why you called 911; correct? [¶] [Defendant:] That's correct. [¶] [Defendant's counsel:] What is that reason? [¶] [Defendant:] [M.G.] came over my house with two other individuals and told me I better turn myself in. [¶] [Defendant's counsel:] Did he threaten you? [¶] [Defendant:] Yeah, he did. [¶] [Defendant's counsel:] And the threat was, 'you better turn yourself in?' [¶] [Defendant:] Correct. [¶] [Defendant's counsel:] Was the threat physical harm? [¶] [Defendant:] Yes. [¶] [Defendant's counsel:] In your opinion, could [M.G.] physically harm you? [¶] [Defendant:] Yes. [¶] [Prosecutor:] Objection. Relevancy, Your Honor, all of this. [¶] [Trial court:] The objection is sustained. The answer is stricken. He made a threat to [defendant]. [¶] [Defendant's counsel:] Do you have any reason to believe [M.G.] would carry out a threat? [¶] [Prosecutor:] Same objection. [¶] [Trial court:] The objection is sustained. [¶] [Defendant's counsel:] How well do you know [M.G.]? [¶] [Defendant:] The past five years. Very well. [¶] [Defendant's counsel:] You do know about activities he's involved in? [¶] [Defendant:] Yes. [¶] [Prosecutor:] Same objection, Your Honor. [¶] [Trial court:] The objection is sustained."

Defendant testified during his cross-examination that he called the police because M.G. threatened him. Defendant said that M.G. and two other people went to his house, and M.G. "threw three punches at" him because M.G. wanted him "to confess and just tell him what happened." Defendant's counsel argued during closing argument that defendant "was threatened by the victim's father, and so he went to call the police. That was never contradicted."

---

[4]      Defendant described the group in which M.G. was a member as a "biker club, like social club."

## 2. *Analysis*

As stated above, we review evidentiary claims for abuse of discretion. (*People v. Sisneros, supra,* 174 Cal.App.4th at p. 151.) Defendant contends that the trial court erred in sustaining the prosecutor's relevancy objections to defendant's counsel's question to mother about whether M.G. was in a motorcycle gang, to defendant's counsel's questions to defendant about whether defendant knew of any activities in which M.G's was involved, to defendant regarding his opinion of whether M.G. could physically harm him, and to defendant whether he had reason to believe that M.G. would carry out a threat. Defendant argues that the evidence was relevant to his attempt to "mitigate the admissions" he made to law enforcement because he made them under duress from M.G.

Defendant does not identify what statements he made to law enforcement that he contends were admissions made under duress from M.G. The failure to develop an argument constitutes a forfeiture of the issue on appeal. (*Magic Kitchen LLC v. Good Things Internat., Ltd*. (2007) 153 Cal.App.4th 1144, 1161-1162; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["'Contentions are waived when a party fails to support them with reasoned argument and citations to authority'"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"].) Defendant has forfeited his contention that the trial court erred in making the evidentiary rulings.

Even if defendant did not forfeit his contention that the trial court erred in making the evidentiary rulings, the questions to which the prosecutor objected were irrelevant. Evidence was introduced that M.G. and two other people went to defendant's house and told defendant that he better turn himself in, and M.G. "threw three punches at" defendant because M.G. wanted him "to confess and just tell him what happened." Defendant testified that "the reason" he contacted the police was because M.G. threatened him with physical harm. Defendant's counsel even argued during closing argument that defendant "was threatened by the victim's father, and so he went to call the police. That was never contradicted." It therefore is irrelevant to the issue of M.G.'s

11

alleged coercion of defendant whether M.G. was in a motorcycle gang, whether defendant knew of any activities in which M.G was involved, whether defendant believed that M.G. could physically harm him, or whether defendant had reason to believe that M.G. would carry out a threat. The fact remains that defendant testified that the reason he went to the police was because he was physically threatened by M.G.—that is, he was purportedly coerced by M.G. into contacting the police.

Defendant does not establish that he acted against his will in contacting the police. There was no evidence in the record that defendant would not have contacted the police had it not been for M.G.'s alleged threats of harm. Moreover, M.G. allegedly implored defendant to turn himself in, and "confess" and tell the police what happened, but that does not necessarily mean defendant was forced not to give his rendition of what happened.

Also we cannot set aside the judgment based on the exclusion of defendant's testimony because defendant's counsel failed to make an offer of proof regarding that excluded evidence and there was not a miscarriage of justice. Evidence Code section 354, subsection (a) provides, "A verdict . . . shall not be set aside, nor shall the judgment . . . based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means. . . ." It is not reasonable to infer that the questions posed to defendant made known to the trial court the substance of defendant's prospective testimony or the purpose and relevance of that excluded evidence. And at no time did defendant's counsel make on offer of proof regarding the proposed testimony and advise the trial court that the proposed evidence was relevant to his attempt to develop an argument for the jury that defendant's admissions made to law enforcement were a result of duress from, or coercion by, M.G.

12

Sustaining the objection to the question of whether M.G. was in a motorcycle gang occurred during the cross-examination of mother and therefore, pursuant to Evidence Code section 354, subdivision (c), "[t]he substance, purpose, and relevance of the excluded evidence" need not be made known to the court. Nevertheless, the trial court had the discretion to sustain the objection on the ground of relevance. Moreover, even if the trial court erred, there was no miscarriage of justice, as required by Evidence Code section 354 in order for the judgment to be reversed. It was not reasonably probable that defendant would have obtained a more favorable result had mother's testimony been admitted (*Simandle v. Vista De Santa Barbara Associates, LP* (2009) 178 Cal.App.4th 1317, 1324) because defendant told Detective McCormick that M.G. was in a "biker club, like social club," and substantial evidence was introduced at trial in support of defendant's conviction, based on his willfully kissing S.G. on her lips with his tongue.

## C.    Exclusion of Defendant's Opinion Testimony That the Detective Lied.

Defendant contends that the trial court erred in precluding defendant's counsel from asking defendant whether Detective McCormick "lied" in describing defendant's demonstration during his interview of how he kissed S.G. We disagree.

### 1.    Background Facts

During defendant's interview with Detective McCormick, defendant demonstrated how he kissed S.G. Detective McCormick testified that during the interview, "[Defendant] told me, no, he had not [used his tongue when he kissed S.G.], and then he proceeded to show me how he kissed [S.G.] And when he showed me, it was a slight open-mouthed kiss as he leaned into somebody to kiss them, and it appeared—the implication was his mouth was open and his tongue was out and may have brushed across her lips, but he was saying he didn't try to put it in her mouth."

The following exchange occurred at trial during defendant's cross-examination: "[Prosecutor:] The detective here interviewed you; is that correct? [¶] [Defendant:] That's correct. [¶] [Prosecutor:] Was he honest about the interview? [¶] [Defendant:]

13

Up to the point that he says I opened up my mouth and tried to stick my tongue out in showing him how I kissed the girl. [¶] [Prosecutor:] So you're saying the detective lied about that? [¶] [Defendant:] That's correct."

The following exchange occurred during defendant's redirect testimony: "[Defendant's counsel:] [W]hen it comes to the detective, and it came to the demonstration with the open mouth and stuff like that, the word 'lied" was used. [¶] [Defendant:] Correct. [¶] [Defendant's counsel:] And I don't recall if that was your word or [the prosecutor's] word, but is it your opinion that this detective lied or he was mistaken? [¶] [Prosecutor:] Objection. Leading, Your Honor. [¶] [Trial court:] I never let that work be used in my courtroom, 'lied.' 'Mistaken' or something else for that word. So let's reframe your question. . . . [¶] [Defendant's counsel:] Are you saying that the detective lied? [¶] [Trial court:] I said we don't use that word in my courtroom with a witness. We use some other word. [¶] Do you believe Detective McCormick was mistaken? [¶] [Defendant:] Yes."

### 2. *Analysis*

Defendant relies on *People v. Chatman* (2006) 38 Cal.4th 344 (*Chatman*), in support of his contention that the trial court abused its discretion by "categorically ban[ning] all discussion of whether a witness 'lied.'" Specifically, defendant relies on the following Supreme Court's statements in *Chatman*, *supra*, 38 Cal.4th 344: "There is no reason to categorically exclude all . . . questions [to the defendant about whether another witness is lying]. Were a defendant to testify on direct examination that a witness against him lied, and go on to give reasons for this deception, surely that testimony would not be excluded merely because credibility determinations fall squarely within the jury's province. Similarly, cross-examination along this line should not be categorically prohibited." (*Id*. at p. 382.)

Regardless of whether the trial court prohibited defendant's counsel from asking defendant whether Detective McCormick "lied" because it "categorically ban[ed] all discussion of whether a witness 'lied,'" we are required to uphold the trial court's ruling

14

if it is correct on any basis, regardless of whether it is the ground relied upon by the trial judge. [Citation.] (*In re Marriage of Carlson* (1991) 229 Cal.App.3d 1330, 1337, overruled on other grounds as stated in *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37.) As discussed below, because defendant has not established that he has personal knowledge of the subject of Detective McCormick's testimony—how defendant's demonstration of his kissing S.G. appeared to Detective McCormick—or that defendant had insight into Detective McCormick's bias, interest, or motive to lie, the trial court did not err.

The Supreme Court stated in *Chatman*, *supra*, 38 Cal.4th 344, "If a defendant has no relevant personal knowledge of the events, or of a reason that a witness may be lying or mistaken, he might have no relevant testimony to provide. No witness may give testimony based on conjecture or speculation. [Citation.] Such evidence is irrelevant because it has no tendency in reason to resolve questions in dispute. [Citation.] [¶] . . . [¶] A defendant who is a percipient witness to the events at issue has personal knowledge whether other witnesses who describe those events are testifying truthfully and accurately. As a result, he might also be able to provide insight on whether witnesses whose testimony differs from his own are intentionally lying or are merely mistaken. When, as here, the defendant knows the other witnesses well, he might know of reasons those witnesses might lie. Any of this testimony could be relevant to the credibility of both the defendant and the other witnesses. [¶] . . . [¶] [C]ourts should carefully scrutinize 'were they lying' questions in context. They should not be permitted when argumentative, or when designed to elicit testimony that is irrelevant or speculative. . . . [I]n its discretion, a court may permit such questions if the witness to whom they are addressed has personal knowledge that allows him to provide competent testimony that may legitimately assist the trier of fact in resolving credibility questions." (*Id*. at pp. 382, 384; *People v. Zambrano* (2004) 124 Cal.App.4th 228, 241 [the defendant, a stranger to the testifying police officers, had no basis for insight into their bias, interest, or motive to be untruthful and therefore the defendant would be opining without foundation that the officers were liars].)

Defendant would be speculating whether Detective McCormick "lied" in testifying about how defendant's demonstration of his kissing S.G. appeared to Detective McCormick. Defendant did not have personal knowledge of how his demonstration appeared to Detective McCormick to allow defendant to know whether Detective McCormick accurately testified that it appeared to him from the demonstration that defendant's mouth was open and his tongue was out, such that he may have brushed across S.G.'s lips. Similarly, there is no basis for defendant having familiarity with Detective McCormick such that defendant would know what motivation, if any, Detective McCormick might have to lie. The trial court did not abuse its discretion in precluding defendant's counsel from asking defendant whether Detective McCormick "lied."

In addition, defendant did not demonstrate that he was prejudiced by his claim of error. Regardless of whether the trial court erred in precluding defendant's counsel from asking defendant on redirect examination if Detective McCormick "lied," defendant previously testified, during his cross-examination, that Detective McCormick "lied." Any conceivable prejudice caused to defendant from the trial court precluding defendant's counsel from asking defendant on redirect testimony whether Detective McCormick "lied" would have been so slight as to be harmless beyond a reasonable doubt. (*Chapman, supra,* 386 U.S. at p. 24.)

### D.     Prosecutor Endorsement of Vigilante Justice

Defendant contends that the prosecutor engaged in misconduct by endorsing the notion of M.G. taking the law into his own hands, thereby "improperly encourage[ing] the jury to abdicate their sworn responsibility to deliver impartial justice based on the facts of the case to the alleged opinion of a hypothetical mob." We disagree.

16

### 1. Applicable Law

"""A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' [Citations.]" [Citations.]' [Citation.]" (*People v. Lopez* (2013) 56 Cal.4th 1028, 1072.)

### 2. Background Facts

As noted above, on cross examination, defendant stated that M.G. threw "three punches at me" in an attempt to compel defendant to turn himself into the police and "tell [them] what happened." The following exchange then occurred: "[Prosecutor:] "If somebody kissed your 13-year-old daughter on the lips with the tongue, wouldn't you beat the shit out of that person? [¶] [Defendant's counsel:] Objection, You Honor. Argumentative. [¶] [Trial court:] Overruled. Your answer is no? [¶] [Defendant:] What was the question again? [¶] [Prosecutor:] "If somebody kissed your 13-year-old daughter on the lips with the tongue, wouldn't you beat the shit out of that person? [¶] [Defendant:] If that was the case, yes, but in my case, it wasn't the case. I never used my tongue."

During closing argument, the prosecution stated, "While a lot of people would have liked to have held the defendant accountable by beating him up, a lot of people feel that way, nothing wrong with that, but the only—but we're here to let the legal process work its way out, and the only one that can hold him accountable is you twelve. So, please, take your deliberations seriously, consider all of the evidence, and just simply accept the reasonable interpretation of the facts and find him guilty of these two counts."

17

### 3. Analysis

The Attorney General contends that defendant forfeited his prosecutorial misconduct claim. We agree.

"[T]o preserve the issue of prosecutorial misconduct on appeal, the defendant must both object *and* request a curative admonition unless such admonition would have failed to cure to any prejudice." (*People v. Lopez*, *supra*, 56 Cal.4th at p. 1073.) Defendant did not object to the prosecutor's closing argument, which on appeal he now claims constitutes prosecutorial misconduct, and defendant objected to the prosecutor's question to defendant of whether he would "beat the shit out of" a person who kissed his 13-year-old daughter on the lips with the tongue only on the ground that it was argumentative. Defendant failed to object to the claimed prosecutorial misconduct on that ground, and did not request a curative admonition. (*People v. Hill* (1998) 17 Cal.4th 800, 820 ["As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless . . . on [that] ground . . . the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety"].)

Had defendant requested an appropriate jury admonition, it may have cured any prejudice to defendant from the claimed prosecutorial misconduct. The trial court could have reminded the jury to decide the case by applying the facts to the law, and that it was not, as defendant argues, "to deliver impartial justice based on the alleged opinion of a hypothetical mob." Appellant's failure to object to the claimed prosecutorial misconduct and seek an admonition forfeited his claim.

### E. Sufficient Evidence

Defendant contends that if the above errors had not occurred, the jury would have had insufficient reasons to convict defendant on count 2; and the jury "unreasonably rejected the evidence" that supported his innocence. We disagree.

### 1. *Applicable Law and Standard of Review*

Section 288, subdivision (a) states that, "[A]ny person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

The court in *In re R.C.* (2011) 196 Cal.App.4th 741, stated, "[S]ection 288 'prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the "gist" of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act.' (*People v. Martinez* (1995) 11 Cal.4th 434, 444 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*).) Thus, any touching of a child under the age of 14 is a felony offense 'even if the touching is outwardly innocuous and inoffensive, if it is accompanied by the *intent* to arouse or gratify the sexual desires of either the perpetrator or the victim.' (*People v. Lopez* (1998) 19 Cal.4th 282, 289 [79 Cal.Rptr.2d 195, 965 P.2d 713]; accord, *People v. Panah* (2005) 35 Cal.4th 395, 488 [25 Cal.Rptr.3d 672, 107 P.3d 790]." (*Id.* at p. 749, fn. omitted.) The court in *In re R.C.* continued, "Unlike kissing without the use of tongues, which is an important means of demonstrating parental love and affection for a child, there can be no innocent or lovingly affectionate tongue kissing of a child by an adult. As described by a popular reference work, 'Kissing is a kind of touch that has as much range as a big-city orchestra. It can be a perfunctory peck on the cheek, so asexual that balding Communist Party apparatchiks aren't ashamed to do it on TV, or it can be so explosively erotic it's about as close to intercourse as you can get. French kissing (what's sometimes called "soul kissing"), in which one's tongue deeply penetrates a lover's mouth, is an almost perfect mimic of intercourse itself.' [Citations.]" (*Id.* at pp. 750-751.)

Defendant's challenge to the sufficiency of the evidence in support of his conviction is reviewed under a substantial evidence standard. "'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we

19

"examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' [Citations.]" (*People v. Scott* (2011) 52 Cal.4th 452, 487.)

### 2. Analysis

Defendant contends that the jury would have had "insufficient reason[s] to convict" defendant on count 2 if defendant's claimed errors had not occurred, arguing that the jury "unreasonably rejected the evidence" that supported his innocence. As noted above, however, defendant's contentions that errors occurred are without merit. Even had defendant's claimed errors occurred, defendant does not argue what evidence the jury rejected, or why the jury's rejection of that evidence was unreasonable.

In addition, there is sufficient evidence to support defendant's conviction of violating section 288, subdivision (a). S.G. testified that defendant kissed her "with [his] tongue." Deputy Jaramillo testified that defendant told him that he kissed S.G. on the lips, and during defendant's interview with Detective McCormick defendant said he kissed S.G. twice. Deputy Madrid testified that S.G. said defendant "used his tongue" when he kissed her. S.G. further described the incident as defendant having "tongue kissed" her, and having kissed her on the lips and brushing "his tongue across [S.G.'s] lips."

S.G. testified that the day after the incident she sent defendant a text message from her cellular telephone asking him, "Why did you kiss me?," and defendant responded, "sweet lips" or "soft lips." Madrid testified that S.G. said that when S.G. asked defendant in a text message why he kissed her, defendant responded, "sweet lips." During

20

defendant's interview with Detective McCormick defendant conceded that he said "sweet lips" in a text message to S.G. the day after the incident. S.G. testified that defendant sent a text message to her instructing her to delete the messages "because I don't want nobody to see them," and told S.G. how to delete them.

During defendant's interview with Detective McCormick, defendant told Detective McCormick that after he kissed S.G. he thought that he "fucked up;" he regretted what happened; he knows that it was wrong; and the kiss he gave S.G. was "not a kiss towards a friend's daughter." Detective McCormick testified, without objection, that defendant said he "fucked up" during his recorded interview because "he kissed a 13-year old girl in a sexual way when he shouldn't have." This evidence is sufficient to support that any error was harmless.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

MINK, J.[*]

---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21