Filed 12/4/19

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CANYON VIEW LIMITED, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> LAKEVIEW LOAN SERVICING, LLC, <br><br>     Defendant and Respondent. | B285489 <br><br> (Los Angeles County <br> Super. Ct. No. PC057181) |
| CANYON VIEW LIMITED, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> BANK OF AMERICA, N.A., et al., <br><br>     Defendants and Respondents. | B286322 <br><br> (Los Angeles County <br> Super. Ct. No. PC057199) |
| CANYON VIEW LIMITED, <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> OWCEN LOAN SERVICING, LLC, et al., <br><br>     Defendants and Respondents. | B286614 <br><br> (Los Angeles County <br> Super. Ct. No. PC057291) |

---

    * Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Factual and Procedural Summary *post*, parts B.4 and C.2 and the Discussion *post*, parts I.A.2.b, I.B, I.C, and II.

CANYON VIEW LIMITED,

    Plaintiff and Appellant,

    v.

HOUSEHOLD FINANCE
CORPORATION OF CALIFORNIA,
et al.,

    Defendants and Respondents.

       APPEALS from orders of the Superior Court of Los Angeles County, Stephen P. Pfahler and Melvin D. Sandvig, Judges. Affirmed in part and reversed in part with directions.

       Norminton, Wiita & Fuster, Thomas M. Norminton and Kathleen Dority Fuster for Plaintiff and Appellant Canyon View Limited.

       McCarthy & Holthus and Melissa Robbins Coutts for Defendant and Respondent Lakeview Loan Servicing, LLC.

       McGlinchey Stafford, Sanford P. Shatz and Kevin S. Kim for Defendants and Respondents Bank of America, N.A., and The Bank of New York Mellon, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2005-84 Mortgage Pass-Through Certificates, Series 2005-84.

       Bryan Cave Leighton Paisner, Christopher L. Dueringer and Kazim A. Naqvi for Defendants and Respondents Ocwen Loan Servicing, LLC, and Power Default Services, Inc.

       Katten Muchin Rosenman, Stuart M. Richter, Gregory S. Korman, Paul A. Grammatico and Austin T. Beardsley for Defendants and Respondents Household Finance Corporation of California and HSBC Mortgage Services Inc.

Plaintiff Canyon View Limited (Canyon View), a mobilehome park owner, appeals from orders denying its motions for attorney fees and costs under the Mobilehome Residency Law (MRL) (Civ. Code,[1] § 798 et seq.), and costs under Code of Civil Procedure section 1032. These orders stem from four actions, consolidated for purposes of appeal, in which Canyon View sued several entities that at one time held liens on four mobilehomes located in Canyon View's mobilehome park: (1) defendant and respondent Lakeview Loan Servicing, LLC (Lakeview); (2) defendants and respondents Bank of America, N.A. (BOA) and The Bank of New York Mellon (BONY) (collectively, the BONY respondents); (3) defendants and respondents Ocwen Loan Servicing, LLC (Ocwen) and Power Default Services, Inc. (Power) (collectively, the Ocwen respondents); and (4) defendants and respondents Household Finance Corporation of California (Household) and HSBC Mortgage Services Inc. (HSBC) (collectively, the Household respondents). The actions sought to quiet title to these homes in Canyon View after it purchased them via MRL-regulated proceedings and public sales. Under the MRL, the purchase of a mobilehome at such a sale extinguishes all then-existing liens and interests in the home. After Canyon View purchased the mobilehomes and acquired title, respondents recorded documents that asserted liens on and security interests in the homes. Canyon View alleged that such documents created a cloud on title, which its lawsuits sought to clear.

All actions were resolved in Canyon View's favor before trial. Thereafter, the trial court denied Canyon View's requests for attorney fees and costs under the MRL's attorney fees statute,

---

[1] Unless otherwise specified, all statutory references are to the Civil Code.

which applies to actions "arising out of" the MRL. (§ 798.85.) It further denied Canyon View's requests in two of the four actions for costs under Code of Civil Procedure section 1032, subdivision (b).

In the published portion of this opinion, we conclude that, contrary to the trial court's ruling, an action need not involve the mobilehome park management-resident relationship or landlord-tenant issues in order for it to "arise out of" the MRL. The MRL addresses numerous issues and rights, including the right of a purchaser at an MRL-regulated abandonment or warehouse lien sale to take title free and clear of any existing liens and interests, other than a lien in favor of the state for nonpayment of fees and penalties. (§§ 798.61, subd. (e)(4), 798.56a, subd. (e)(1).) Because Canyon View's actions against Lakeview, the BONY respondents, and the Household respondents were necessary to perfect Canyon View's right to free and clear title under the MRL, they arose out of the MRL, and Canyon View, as the prevailing party, is entitled to recover its reasonable attorney fees and costs.

In the unpublished portion of this opinion, we reject the trial court's alternative bases for denying attorney fees and costs under the MRL in all actions, reverse the trial court's order granting the BONY respondents' motion to strike costs in the BONY action, and affirm the court's rulings denying Canyon View's requests for fees and costs in the Ocwen action. As to the Ocwen action, before Canyon View filed suit, the Ocwen respondents offered to take all steps within their power to remove any cloud on Canyon View's title, including executing a reconveyance and recording a quitclaim deed. Suing the Ocwen respondents for this same relief was therefore not necessary to enforce Canyon View's right under the MRL to clear title; thus, the Ocwen action did not arise out of the MRL. Accordingly, Canyon View is not entitled to attorney fees or costs under the MRL in that action.

4

As to Canyon View's memoranda of costs, we conclude that the trial court acted within its considerable discretion in concluding that Canyon View was not entitled to costs in the Ocwen action under Code of Civil Procedure section 1032, subdivision (b). We need not address the court's refusal to award costs under Code of Civil Procedure section 1032, subdivision (b) in the BONY action, given our conclusion that Canyon View is entitled to reasonable costs under the MRL in that action.

Accordingly, we reverse the court's orders denying Canyon View's motions for attorney fees and costs under the MRL in the Lakeview, BONY, and Household actions, as well as the trial court's order granting the BONY respondents' motion to strike costs, and direct the trial court in these three actions to determine the amount of section 798.85 attorney fees and costs reasonable under the circumstances. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### A. *The MRL*

The MRL is a collection of statutes regulating various issues involving mobilehomes. Although the MRL is not the only law addressing the unique legal issues created by mobilehome ownership and tenancy,[2] its provisions address a wide range of such issues.

---

[2] "For example, the Mobilehomes-Manufactured Housing Act of 1980 (Health & Saf. Code, § 18000 et seq.) regulates a number of items, including sales and escrows of mobilehomes. Another example is the Mobilehome Parks Act (Health & Saf. Code, § 18200 et seq.) which regulates the construction and operation of mobilehome parks and recreational vehicle parks." (*SC Manufactured Homes, Inc. v. Canyon View Estates, Inc.* (2007) 148 Cal.App.4th 663, 674 (*SC Manufactured*).)

Much of the MRL is dedicated to " ' "extensively regulat[ing] the landlord-tenant relationship between mobilehome park owners and residents." ' " (*SC Manufactured Homes, supra,* 148 Cal.App.4th at p. 673.) These sections of the MRL address such issues as rental agreements between mobilehome park owners and their residents, rules and regulations in mobilehome parks, fees and charges a mobilehome park owner may charge its residents, utilities, rent control, and homeowners associations. (See §§ 798.15–798.53 [MRL arts. 2–5.5]; see also §§ 799–799.11 [MRL art. 9].) These provisions " 'reflect legislative recognition of the unique nature of mobilehome tenancies.' [Citation.] Ordinarily, mobilehome park tenants own their homes but rent the spaces they occupy. [Citation.] Once a mobilehome is in place in a park, it is difficult to relocate. [Citations.] Its owner thus "is more likely to be a long-term resident." [Citation.] In many cases, mobilehome park tenants have limited and undesirable options if they find "living in the park no longer desirable, practical, or possible . . . ." [Citation.]' [Citation.] The MRL provides 'homeowners a measure of stability and predictability in their mobilehome park residency.' " (See *SC Manufactured, supra,* at p. 673, fn. omitted.)

Because over half of the sections contained in the MRL address relations between mobilehome park owners and residents, many courts have focused on that relationship when describing the MRL's scope and goals. (See, e.g., *Cacho v. Boudreau* (2007) 40 Cal.4th 341, 345 (*Cacho*) [the MRL "regulates relations between the owners and the residents of mobilehome parks"]; *SC Manufactured, supra,* 148 Cal.App.4th at p. 678 ["The MRL regulates the conduct between tenants and landlords—mobilehome homeowners and residents and mobilehome [park] management."].)

But the MRL also addresses other situations and serves other policy goals that, like the goals related to tenants' rights, arise from

the unique characteristics of mobilehomes, such as the difficulty and cost associated with moving and/or installing a mobilehome.[3] (See § 798.55.) Most notably for the purposes of this appeal, the MRL seeks to improve "the flexibility and attractiveness of mobilehome financing" and creates rights and procedures that facilitate and encourage the purchase or other disposition of abandoned mobilehomes. (Business and Transportation Agency, Enrolled Bill Rep. on Assem. Bill No. 2915 (1979–1980 Reg. Sess.) Sept. 15, 1980 at p. 3 (BTA Report); see *id*. at p. 1 [noting certain amendments were "developed with the lending industry to make mobilehomes more desirable collateral despite their mobility"]; see also *Adamson Companies v. Zipp* (1984) 163 Cal.App.3d Supp. 1, 13–15 (*Adamson*) [noting legislative goal of certain MRL provisions was "to enhance the availability of financing of mobilehome purchasers" and "to protect the security and ownership interests of the nontenant owner"].) By accomplishing these goals, the MRL seeks to address California's broader housing issues as well. (See *id*. at p. 21 [Legislature was "cognizant" while drafting MRL of the "critical shortage of decent housing available in particular to families with children in California"]; see BTA Report at p. 3.)

---

[3] Some courts—including the trial court in this case—have cited *Cacho, supra,* 40 Cal.4th 341 to imply that regulating the mobilehome landlord-tenant relationship is the *exclusive* goal of the MRL. (See *SC Manufactured, supra*, 148 Cal.App.4th at pp. 673–674.) But *Cacho* notes only that the MRL regulates the mobilehome landlord-tenant relationship—not that it does so exclusively. Moreover, *Cacho* involved a lawsuit between mobilehome park management and a park resident that raised only landlord-tenant issues. Thus, the Court in *Cacho* had no occasion to address the other goals of the MRL.

7

The MRL promotes these goals in various ways. For example, article 7 of the MRL (§§ 798.70–798.83), which addresses the transfer of mobilehomes or mobilehome parks, permits any lienholder[4] to sell that home while it is still installed in a mobilehome park.  (§ 798.79.)

Article 6 of the MRL (§§ 798.55–798.61) addresses the termination of mobilehome tenancies not only by granting tenants certain rights prior to termination, but also by requiring that mobilehome park management give notice of termination to lienholders and afford them the opportunity to take certain actions upon termination of a leasehold, including "sell[ing] the obligation secured by the mobilehome to the management," "foreclose[ing] on [the] security interest," and selling the mobilehome to a third party, provided the lienholder fulfills certain duties.  (§ 798.56a, subd. (a)(1)–(2).)

Relatedly, article 6 of the MRL (§§ 798.55–798.61) also creates procedures whereby mobilehome park management may sell or dispose of abandoned mobilehomes.  (See § 798.61.) Specifically, management must properly notice all owners and lienholders regarding management's intention to file a petition for declaration of abandonment.  (*Id*., subds. (b) & (c).)  If no lienholder

_____

[4] The MRL more specifically refers to both "legal owner[s]" and "junior lienholder[s]."  (See, e.g., § 798.55, subd. (b)(1).)  It adopts the definitions of these terms in the Health and Safety Code, which defines them, respectively, as any entity or person "holding a security interest" in a mobilehome (Health & Saf. Code, § 18005.8; § 798.55, subd. (b)(1)), and any entity or person "other than a legal owner, holding a security interest in a [mobilehome] . . . perfected by filing the appropriate documents."  (Health & Saf. Code, § 18005.3; § 798.55, subd. (b)(1).)  As this distinction does not affect our analysis, and for ease of reference, we use the term "lienholders" to refer to all such holders of a security interest.

8

or owner appears at the hearing on the petition to claim the abandoned home (and pay all rents and fees due), the court may issue a judgment of abandonment, following which management may sell or otherwise dispose of the abandoned home in compliance with MRL procedures. (*Id.*, subds. (e) & (f).) When management opts to sell the home, the purchaser takes the home "free of any prior interest . . . or lien."[5] (*Id.*, subd. (e)(4).) The MRL expressly permits park management to purchase an abandoned mobilehome at such a sale, and to offset from its bids the amount management is owed under the lease.[6] (*Id.*, subd. (e)(2).) The MRL includes similar procedures whereby a mobilehome park manager may acquire a warehouse lien on an abandoned mobilehome and conduct a warehouse lien sale, at which the purchaser takes title to the home "whether or not there existed a [lienholder] on this title to the mobilehome." (§ 798.56a, subd. (e)(1); see generally § 798.56a.)

Thus, the MRL creates rights and protections not only for mobilehome tenants, but also for lienholders, "management, selling homeowners"—whether or not they are also residents— and "purchasers" of mobilehomes as well. (*SC Manufactured*, *supra*, 148 Cal.App.4th at p. 674; accord, *Simandle v. Vista de Santa Barbara Associates, LP* (2009) 178 Cal.App.4th 1317, 1323 (*Simandle*); see, e.g., §§ 798.61, 798.79.)

---

[5] The one exception provided for in the MRL is a lien of the state for nonpayment of the fees and penalties under Health and Safety Code section 18116.1. (§ 798.61, subd. (e)(4).)

[6] When management is not the purchaser of the abandoned mobilehome, management may deduct the amount it is owed from the proceeds of the sale, but shall pay the remainder as unclaimed property to the treasury of the applicable county. (§ 798.61, subd. (e)(2).)

9

Finally, article 8 of the MRL (§§ 798.84–798.88) addresses civil actions to remedy particular violations of the MRL, such as public nuisance actions based on mobilehome park management failing to properly maintain common areas, or substantial violations of mobilehome park rules.  (See § 798.87.)  Crucially for the purposes of this appeal, it also contains an attorney fees and costs provision, which requires a court to award reasonable attorney fees and costs to the "prevailing party" "[i]n any action arising out of the provisions of this chapter [i.e., the MRL]."  (§ 798.85.)  For the purposes of this section, "[a] party shall be deemed a prevailing party . . . if the judgment is rendered in his or her favor or where the litigation is dismissed in his or her favor prior to or during the trial," absent an agreement to the contrary.  (*Ibid.*)

### B.    *The Quiet Title Actions Below*

The cases below share certain facts relevant to this appeal. There are, however, also key factual differences between them. We therefore provide a summary of the facts and proceedings in each action as necessary to resolve the issues.

### 1.    *Canyon View*

Canyon View owns and operates Canyon View Estates, a mobilehome park located in Santa Clarita.  Canyon View owns the fee interest in the land.  It leases the lots in the park pursuant to long-term leases to owners of mobilehomes, which are installed on the lots.

10

## 2.     *Case No. PC057181 against Lakeview and Quality Loan Service Corporation (the Lakeview action)*

In December 2004, Canyon View leased lot 213 to Blanca Shapiro.  Also in 2004, Shapiro obtained a loan from Lakeview, secured by a deed of trust on the mobilehome installed on lot 213.[7]

Shapiro defaulted on her loan in 2014, and a notice of default under the deed of trust was recorded.  Also in 2014, Shapiro breached her lease with Canyon View by failing to pay rent and other obligations.  Canyon View issued the requisite notices to Shapiro and all lienholders, but no one cured Shapiro's defaults under the lease.

Canyon View initiated an abandonment proceeding under the MRL and, in June 2014, obtained a judgment declaring the mobilehome abandoned.  As required by the MRL, Canyon View provided notice to Shapiro and all lienholders of the abandonment proceedings and the resulting court-ordered public sale.  Canyon View purchased the mobilehome on lot 213 at that sale on July 2, 2014.  Under the MRL, section 798.61, subdivision (e)(4), that purchase extinguished all liens on and interests in the mobilehome.  A grant deed conveying the mobilehome to Canyon View was recorded on July 15, 2014.

---

[7] Lakeview's briefing describes the deed of trust as encumbering only a "leasehold interest."  The record does not support this characterization.  At least one document Lakeview caused to be recorded, as well as the stipulated judgment Lakeview later executed in the Lakeview action, refers to the estate it encumbers under the deed of trust as both "a fee interest in and to that certain manufactured home installed on [lot 213]" and "a leasehold interest in [lot 213]."  (Capitalization omitted.)

Almost a year after Canyon View took title to the mobilehome, on May 14, 2015, Quality Loan Service Corporation (Quality), as trustee under Lakeview's deed of trust, recorded a rescission of the notice of default recorded in 2014.[8] The rescission notice stated that, although Quality was not electing to foreclose on the home, the deed of trust and all rights and obligations thereunder "remain in force and effect," and that this election "shall in no way jeopardize or impair any right, remedy or privilege" under the deed of trust or "alter in any respect" that deed. A corrected version of this document recorded on May 11, 2016 contains similar language purporting to recognize, without alteration, the security rights in the mobilehome created by the deed of trust.

Upon learning that such documents had been recorded, Canyon View sent several letters to Lakeview, Quality, and their counsel, demanding that they take all actions necessary to remove the cloud on Canyon View's title to the subject mobilehome, including executing a full reconveyance and quitclaim deed. These communications spanned several months, and the record does not reflect whether Lakeview or Quality responded.

---

[8] We note that the 13-volume appellant's appendix containing approximately 2,800 pages does not appear to contain this or any of the other documents allegedly clouding title in the Lakeview action. Rather, both Canyon View and the Lakeview respondents cite to the complaint, stipulated judgment, and memoranda of points and authorities in the record to support their descriptions of these documents. Our quotations from and descriptions of these documents therefore are based on such representations by the parties.

12

On July 14, 2016, Canyon View filed this action against Lakeview and Quality to quiet title (Code Civ. Proc., § 760.010 et seq.), seeking declaratory relief under the MRL (§ 798.61; Code Civ. Proc., § 1060), and removal of the cloud on title (§ 3412), and for relief under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

Three months into the litigation with Canyon View, on August 17, 2016, Lakeview recorded a full reconveyance of the deed of trust and substitution of trustee, naming itself as the new trustee. Soon thereafter, on September 21, 2016, it recorded a quitclaim deed in favor of Canyon View. These documents disclaimed any and all interest Lakeview had in the mobilehome.

On April 3, 2017, Canyon View and Lakeview filed a stipulation for judgment. The stipulated judgment entered by the court that same day provides that, as a result of Canyon View purchasing the mobilehome on lot 213 at the abandonment sale, Canyon View owned the home, and Lakeview had no lien thereon or interest therein. It further provided that Canyon View would have the right to file a motion for attorney fees and costs pursuant to section 798.85, and Lakeview would have a right to oppose such a motion.

### 3. *Case No. PC057199 against the BONY respondents (the BONY action)*

In October 2005, Dominique Reese and Donna Worthington-Reese purchased a mobilehome on lot 332 in Canyon View Estates. The Reeses obtained a loan secured by a deed of trust encumbering both the mobilehome on lot 332 and the Reeses' leasehold interest in lot 332 as well. That deed of trust was later assigned to BONY and serviced by BOA.

The Reeses entered into a long-term lease with Canyon View for lot 332. In 2007, the Reeses breached their lease by failing to

13

make payments.  Canyon View issued the requisite notices to the Reeses and all lienholders, and no one cured the defaults under the lease.

Canyon View initiated abandonment proceedings under the MRL and obtained a judgment of abandonment in April 2009. As required by the MRL, Canyon View provided notice to the Reeses and all lienholders of the abandonment proceedings and the resulting court-ordered public sale.  Canyon View purchased the mobilehome on lot 332 at that sale on May 7, 2009.  Under section 798.61, subdivision (e)(4), the sale extinguished all liens on and interests in the mobilehome.  A grant deed conveying the mobilehome to Canyon View was recorded on February 23, 2010.

Later on that same day, the trustee for the deed of trust recorded a notice of trustee sale, based on the Reeses having defaulted on their note.  On March 19, 2010, the trustee recorded a notice of default and election to sell under the deed of trust. This notice claimed BONY held a lien on the subject mobilehome. The trustee held a foreclosure sale, and BONY purchased the mobilehome and leasehold interest on September 30, 2010; the trustee's deed upon sale was recorded on October 12, 2010.  BONY never attempted to take possession of the home.

In February and March of 2016, Canyon View sent letters to BONY and the trustee under the deed of trust, as well as counsel for BOA, demanding they remove the cloud on Canyon View's title to the mobilehome.  Communications between the parties regarding these demands continued through June 2016.

On July 22, 2016, Canyon View sued the BONY respondents to quiet title, seeking declaratory relief and removal of the cloud on title, and for relief under the UCL.  Several months into litigation of the suit, in December 2016, BOA, as BONY's agent, recorded a notice of rescission of the trustee's deed to BONY, noting that the

14

foreclosure sale resulting in the trustee's deed was "conducted in error." In this document, BONY "rescind[s], cancel[s], and withdraw[s] [the] [t]rustee's [d]eed [u]pon [s]ale," but notes that the "[d]eed of [t]rust shall remain in force."

Several months after that, on May 3, 2017, the parties entered into a stipulation for judgment. The stipulated judgment entered by the court provided that, as a result of Canyon View purchasing the home at the court-ordered public sale, Canyon View owned the home, and the BONY respondents had no lien thereon or interest therein. Like the judgment in the Lakewood action, it provided that Canyon View had the right to seek, and the BONY respondents had the right to oppose, attorney fees and costs pursuant to section 798.85.

### 4. *Case No. PC057291 against the Ocwen respondents (the Ocwen action)*

In May 2008, Eileen Corp purchased a mobilehome permanently attached to lot 304 in Canyon View Estates, and entered into a long-term lease with Canyon View. To finance the purchase, Corp took out a loan secured by the home, and a deed of trust was recorded, identifying Assurity Financial Services LLC (Assurity) as the lender, Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary, and Landsafe Title of California, Inc. (Landsafe) as the trustee.[9]

On May 21, 2014, MERS, acting "as designated nominee for Assurity . . . beneficiary of the security instrument," executed an assignment, which purported to assign "all beneficial interest under a certain [d]eed of [t]rust" to Ocwen, but incorrectly identified "1st Choice Mortgage Equity Corporation" as the assignor (although

---

[9] Neither Assurity, nor MERS, nor Landsafe are parties to this consolidated appeal.

15

MERS still signed the document).  On November 5, 2014, a corrected notice of assignment was filed, in which MERS, "as designated nominee for Assurity," assigns "all beneficial interest under [the deed of trust]" to Ocwen.

Corp breached her lease with Canyon View by failing to pay the amounts due thereunder.  Canyon View issued the requisite notices to Corp and all lienholders, although it sent notice to Ocwen at an incorrect address.[10]  No one cured the defaults under the lease.

In October 2014, Canyon View initiated abandonment proceedings under procedures set forth in the MRL, and the court declared the subject mobilehome abandoned.  As required by the MRL, Canyon View provided notice to Corp and all lienholders of the abandonment proceedings and resulting court-ordered public sale, though Canyon View again used an incorrect address for Ocwen.  Canyon View purchased the home at that sale on March 31, 2015.  Pursuant to section 798.61, subdivision (e)(4), Canyon View took title " 'free of any prior interest, including any security interest or lien,' " and recorded a grant deed.

Meanwhile, Corp defaulted on the loan initially secured by the deed of trust.  This resulted in a series of documents being recorded that continued to reflect a security interest in the mobilehome under the deed of trust, but were inconsistent (or at least unclear) as to who held the beneficial interest under

---

[10] Ocwen mailed the notice to "Ocwen, [c/o] Financial Dimension" at the address for Financial Dimension, an entity that is not affiliated with Ocwen.  It appears Canyon View incorrectly read the May 2014 assignment document, which identifies Financial Dimension as the party requesting that the document be recorded, as well as the party to whom the document should be sent, once recorded.

the deed of trust. Specifically, on June 25, 2015, Power recorded a notice of default and election to sell under the deed of trust. This document instructed correspondence to be directed to "Ocwen . . . c/o Power." A Power representative signed the document as "trustee for the beneficiary," although the document more broadly described Power as acting as "either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a [d]eed of [t]rust." Months later, on September 14, 2015, Power, identifying itself as trustee, recorded a notice of rescission of the notice of default, which identifies the beneficiary of the deed of trust as "[MERS], as nominee for Assurity." (Boldface omitted.) This document further states that "[i]t is the intention of the [b]eneficiary" that the "[d]eed of [t]rust and all obligations secured thereby shall remain in full force." Finally, on December 2015, Ocwen recorded a corporate assignment of deed of trust, in which MERS, "solely as nominee for Assurity," purports to transfer to "1st Choice Mortgage Equity Corporation at c/o Ocwen Loan Servicing . . . all its interests under the certain [d]eed of [t]rust." (Capitalization omitted.)

Beginning no later than February 2016, Canyon View's counsel sent letters to joint counsel for the Ocwen respondents demanding that "Ocwen agree to remove the cloud on Canyon View's title" by recording a full reconveyance and quitclaim deed. Although Ocwen disputed that Canyon View's notice to Ocwen was valid under the MRL (and thus whether Canyon View had taken title free of any interest held by Ocwen and/or Power), Ocwen also informed Canyon View's counsel on March 3, 2016 that it was willing to "charge off" the loan and record a full reconveyance of the deed of trust.

On July 1, 2016, a substitution of trustee was recorded, naming T.D. Service Company (T.D. Service)—not a party to

this appeal—as trustee, and referring to Ocwen as the "present beneficiary" of the deed of trust. That same day, T.D. Service, as trustee, recorded a full reconveyance that provided as follows: "[H]aving been requested in writing by the holder of the obligations secured by [the] [d]eed of [t]rust, to reconvey the estate granted to trustee under said [d]eed of [t]rust. [T.D. Service] does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired by [t]rustee under said [d]eed of [t]rust."

Upon learning of this reconveyance, Canyon View wrote to counsel for Ocwen and explained that Canyon View did not consider it sufficient to clear the cloud on title because (1) the reconveyance purported to assign the interest of the trustee, T.D. Service, not any beneficial interest under the deed of trust, and (2) given the inconsistencies between the December 2015 corporate assignment and later documents, "it is uncertain whether Ocwen ever had the beneficial interest under the [d]eed of [t]rust, or if it did, whether it or MERS later transferred such beneficial interest to another entity, such as 1st Choice Mortgage." Canyon View further noted that, in order for Canyon View not to file suit to quiet title, Ocwen would need to agree not only to take the steps necessary to clear Canyon View's title, but also to pay Canyon View's attorney fees.

On August 29, 2016, the Ocwen respondents' counsel responded by explaining why it viewed Canyon View's concerns as unfounded, but also agreeing to execute a quitclaim deed and expunge the December 2015 corporate assignment if this would alleviate Canyon View's stated concerns and avoid litigation. Ocwen's offer did not, however, include any attorney fees for Canyon View. The record does not reflect that Canyon View responded to this offer.

18

Less than a month later, on September 16, 2016, Canyon View filed an action against Ocwen, Power, and others, to quiet title, seeking declaratory relief under the MRL and removal of the cloud on title, and for relief under the UCL. While the parties litigated the action, they engaged in settlement negotiations in which Canyon View initially insisted that attorney fees be part of any settlement.

The parties filed a stipulation for judgment on June 27, 2017. The stipulation recites that the Ocwen respondents contended the stipulation was unnecessary due to Ocwen's recording of the full reconveyance, and that they did not contest Canyon View's title to the mobilehome on lot 304, but that, in order to avoid further litigation, and "solely for the purpose of cutting off attorney fees, rather than to correct any purported wrongdoing," the Ocwen respondents stipulated to entry of judgment in Canyon View's favor. The judgment entered that same day confirmed Canyon View's title to the mobilehome, and that the Ocwen respondents had no lien thereon or interest therein. The judgment provided that Canyon View had the right to seek—and the Ocwen respondents had the right to oppose—attorney fees and costs pursuant to section 798.85.

### 5. *Case No. PC057341 against the Household respondents (the Household action)*

In July 2003, Gayle E. Wesley entered into a long-term lease for lot 178 in Canyon View Estates. On August 11, 2003, a deed of trust was recorded to secure Wesley's note for the purchase of a mobilehome on that lot. On August 3, 2015, Household executed a substitution of trustee, in which Household purports to be the beneficiary of the deed of trust, and names Clear Recon Corp. (Clear Recon)—not a party to this appeal—as the trustee. The

19

record does not reflect whether or how Household became the beneficiary.

Wesley defaulted on the note and, on August 12, 2015, Clear Recon recorded a notice of default, identifying Household as the beneficiary, and indicating Household's desire to collect the amount due under the note in lieu of a foreclosure sale.

Wesley also breached his lease with Canyon View in 2015, failing to pay Canyon View rent and other charges due. Canyon View served Wesley and all lienholders, including Household and Clear Recon, with the requisite notices inviting them to cure Wesley's breach of the lease. No one did so. As a result, under the MRL, section 798.56a and the Commercial Code sections referenced therein, Canyon View acquired a warehouse lien on the subject mobilehome to secure payment of past due charges under the lease, as well as the right to enforce the lien via a warehouse lien sale. (See § 798.56a, subd. (e)(1).)

In December 2015, Canyon View served Wesley and all lienholders, including Household and Clear Recon, with notice of public sale under a warehouse lien. Canyon View purchased the mobilehome at this sale and executed a grant deed on February 17, 2016. Canyon View recorded a grant deed on March 8, 2016. Under the MRL, Canyon View took title "whether or not there existed a [lienholder] on th[e] title to the mobilehome." (§ 798.56a, subd. (e)(1).)

On February 24, 2016—after Canyon View had purchased the mobilehome—Clear Recon recorded a notice of trustee's sale, asserting that Clear Recon intended to foreclose on the property for breach of the obligation owed under the deed of trust. This notice describes such obligation as an existing lien against the property. The notice does not identify the beneficiary of the deed of trust, and notes instead the interest is "more fully described" in the deed

20

of trust itself.  (Capitalization omitted.)  In their respondents' brief, the Household respondents represent that this notice was filed "on behalf of [Household]."

In March 2016, Clear Recon sent a notice rescheduling the foreclosure sale.  This notice does not identify the beneficiary of the deed of trust.  In April and June 2016, Canyon View's counsel sent letters to Household and Clear Recon, as well as to their counsel, demanding they take steps necessary to clear Canyon View's title, including canceling the foreclosure sale, recording a full reconveyance, and recording a quitclaim deed.  In May 2016, Clear Recon canceled the foreclosure sale, but did not record any document suggesting—or otherwise communicate to Canyon View—that the obligations under the deed of trust were extinguished or altered.

On August 19, 2016, Clear Recon rescinded its notice of default.  The notice of rescission, however, reasserted that the deed of trust was an existing encumbrance, this time identifying U.S. Bank—not a party to this appeal—rather than Household, as the beneficiary of the deed of trust.  The record does not reflect whether or how U.S. Bank became a beneficiary of the deed of trust, or whether Household remained a beneficiary as well.  At the hearing before this court, counsel for Household represented that Household conveyed its beneficial interest under the deed of trust to U.S. Bank.  But Household's counsel did not state when this occurred or cite any record support for this representation.  Nor does the Household respondents' briefing provide such information.[11]  Our independent review of the record has likewise

_____

[11] For example, the Household respondents' brief provides, without citation to the record, that "U.S. Bank and Caliber [Home Loans] were the current beneficiary and loan servicer respectively when [Canyon View's] [a]ction was filed, whereas [Household

21

yielded no document reflecting when or how U.S. Bank acquired a beneficial interest in or became the beneficiary under the deed of trust, or, most importantly, whether and when Household divested itself of any beneficial interest in the deed of trust.

A month later, on September 29, 2016, T.D. Service recorded a substitution of trustee, in which U.S. Bank again identifies itself as the beneficiary of the deed of trust and names T.D. Service the new trustee.  That same day, T.D. Service executed and recorded a full reconveyance of the deed of trust, which "reconvey[s] . . . without warranty, to the person or persons legally entitled thereto, the estate held [under the deed of trust]." The reconveyance does not identify the beneficiary, but rather notes T.D. Service "received from the holder of the obligations on the property described in said [d]eed of [t]rust[ ] a written request to reconvey."

_____

and HSBC] acted in these roles prior to the loan's transfer to U.S. Bank."  The brief refers to U.S. Bank as the beneficiary on whose behalf a September 2016 reconveyance was executed, but cites only to the reconveyance document itself, which does not establish when U.S. Bank gained this status or whether Household had divested itself of any beneficial interest.  Similarly, the brief notes that, in a settlement agreement between Canyon View, Caliber Home Loans, Clear Recon, and U.S. Bank, U.S. Bank "represented it was the sole, current beneficiary of the [deed of trust]."  The brief cites the portion of the record containing the settlement agreement, which does recite that "no other Household defendant" holds any interest in the property.  But Household was not a party to that agreement.  Other Household respondents' representations about Household's interest in the property cannot, without more, establish that Household no longer holds and will not assert an interest in the property.  Moreover, the recital in the settlement agreement speaks only to the beneficiary as of the date of the settlement, not at the time Canyon View filed suit.

22

On October 13, 2016, Canyon View filed an action against Household, Clear Recon, U.S. Bank, HSBC and others, asserting causes of action to quiet title, seeking declaratory relief under the MRL and removal of the cloud on title, and for relief under the UCL.

In February 2017, Canyon View entered into a settlement agreement with U.S. Bank, Caliber Home Loans and Clear Recon, wherein U.S. Bank, representing itself to be the sole, current beneficiary of the deed of trust, agreed to quitclaim the property to Canyon View and pay Canyon View $17,851.72. On February 22, 2017, U.S. Bank recorded a quitclaim deed to Canyon View.

Meanwhile, Household and HSBC[12] failed to answer the complaint, and Canyon View took their default. In July 2017, the

---

[12] The record is unclear as to when and in what capacity HSBC acquired any interest in Lot 178 and/or engaged in any conduct clouding title to the property. Correspondence between Canyon View's counsel and HSBC's counsel in August 2015 indicates that HSBC was a "secured lender" at that time. August 2016 correspondence between counsel indicates that the loan secured by the deed of trust was "being repurchased by HSBC." These documents also indicate that HSBC expressed to Canyon View an intention to foreclose on the loan at various times. Household and HSBC's joint respondents' brief does not provide any clarity on these issues, except to disclose the general relationship between the two entities in a certification of interested parties as follows: "HSBC Mortgage Services Inc. is a wholly-owned subsidiary of HSBC Finance Corporation (f/k/a Household International, Inc.), which is a wholly owned subsidiary of HSBC Holdings plc. [¶] Household Finance Corporation of California is a wholly-owned subsidiary of HSBC Finance Corporation (f/k/a Household International, Inc.), which is a wholly owned subsidiary of HSBC Holdings plc." Thus, the record before us is insufficient

court conducted a prove-up hearing as to Household and HSBC, after which it entered a "judgment on complaint in plaintiff's favor after the default judgment prove[-]up hearing"[13] (capitalization omitted), which quieted title in Canyon View, free from any lien or interest the Household respondents may have otherwise held at that point. The judgment provided that Canyon View had the right to seek attorney fees and costs, minus the sum of $17,851.72, already paid to Canyon View by the settling defendants, and that Household and HSBC had the right to oppose any such request.

---

to determine whether and in what way any facts specific to HSBC might affect our analysis of the issues on appeal.

[13] Code of Civil Procedure prohibits entry of a default judgment in a quiet title action even after the plaintiff has taken a defendant's default. (See Code Civ. Proc., § 764.010; *Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1503 & 1505.) Specifically, it provides that, in a quiet title action, "[t]he court shall not enter judgment by default but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants, other than claims the validity of which is admitted by the plaintiff in the complaint. The court shall render judgment in accordance with the evidence and the law." (Code Civ. Proc., § 764.010.) Thus, although Canyon View took the Household respondents' default, the judgment entered after the default prove-up hearing is not a "judgment by default" in the traditional sense, but rather one issued after the court's consideration of the merits during a hearing at which the defaulting defendants had a right to appear and present evidence. (See *ibid.*)

24

### C. Canyon View's Efforts to Obtain Attorney Fees and Costs

#### 1. Motions for award of attorney fees and costs

In all four actions, the court denied Canyon View's motion for attorney fees and costs under the MRL. Using virtually identical language, the trial court concluded in each instance that Canyon View's lawsuit did not arise out of the MRL, because "[t]he MRL governs mobilehome tenancies by extensively regulating the landlord-tenant relationship between mobilehome park owners and residents" and that, as such, "the MRL was not designed to cover disputes between mobilehome park owners and third party lienholders." Although each action "may relate to the MRL," the court reasoned, it "does not arise out of the provisions of the MRL."

In each of these orders, the court also noted that "[e]ven if this action did arise out of the provisions of the MRL, the attorneys' fees and costs requested are not reasonable under the circumstances of this case," and all costs and fees should be denied on this basis as well. In the BONY action, the court offered no reasoning as to why the fees and costs requested were unreasonable. In the Lakeview action, the court noted the fees and costs requested were unreasonable because, "[b]ased on documents recorded by [Lakeview] soon after [the] action was filed, the majority of the attorneys' fees" were "unnecessarily incurred." Similarly, in the Ocwen action, the court explained that the fees were unreasonable, because "the majority of the attorneys' fees and costs requested . . . were unnecessarily incurred," given that Ocwen may not have received proper notice of the abandonment proceedings, had recorded "documents" (presumably the reconveyance) before this action was filed, and had made efforts "to resolve this matter throughout the litigation." In the

25

Household action, the court explained that the fees and costs requested were unreasonable, given that other named defendants, who had settled with Canyon View, had already paid $17,851.72 in fees and costs.

Finally, in the Household action, the court also provided another alternative basis for its ruling denying fees. It noted that, under Code of Civil Procedure section 1033.5 and the reasoning of *Garcia v. Politis* (2011) 192 Cal.App.4th 1474 (*Garcia*), a party cannot " 'seek attorney fees by noticed motion after default judgment has been entered, because a case in which a defendant's default has been taken necessarily has no adversarial quality and the defaulted defendant would have no right to participate in the motion.' "

## 2.     *Memoranda of costs*

In the Ocwen and BONY actions, Canyon View also filed a memorandum of costs, which the respective respondents moved to strike and/or to tax.

The trial court granted both motions to strike costs. In the BONY action, the court concluded that Canyon View was not a "prevailing party" under any of the definitions set forth in Code of Civil Procedure section 1032, but rather was a party that had "recover[ed] other than monetary relief." (Code Civ. Proc., § 1032, subd. (a)(4).) The court noted that, under such circumstances, "the 'prevailing party' shall be as determined by the court" and "the court, in its discretion, may allow costs or not." (*Ibid.*)

The court acknowledged that, in both cases, Canyon View obtained the relief it was seeking "by way of a [s]tipulated [j]udgment declaring [the defendants] do not have any interest in the [subject] property" and "cancel[ing] certain instruments recorded against the property, which [Canyon View] contend[ed]

26

were a cloud on title." The court found significant that the BONY respondents were not "claiming any interest in the [subject] property" during the litigation, and that "whether the canceled instruments actually and improperly clouded [Canyon View's] title to the property was never determined due to the stipulated judgment." Therefore, the trial court exercised its discretion to deny Canyon View's request for costs in the BONY action.

The court applied similar reasoning in granting Ocwen's motion to strike costs, noting that, although Canyon View had obtained the relief it was seeking "by way of a [s]tipulated [j]udgment declaring [that the Ocwen respondents did] not have any interest in the property and by having title quieted in its favor," the Ocwen respondents "were not claiming any interest in the property, even before this action was filed." The court cited as additional authority for its decision Code of Civil Procedure section 761.030, subdivision (b), under which, in quiet title actions, "[i]f the defendant disclaims in the answer any claim, or suffers judgment to be taken without answer, the plaintiff shall not recover costs."

### D.   *Canyon View's Appeals*

Canyon View timely appealed the court's orders denying Canyon View's motions for attorney fees and costs in all four actions and striking its costs in the BONY and Ocwen actions.

Upon Canyon View's motion, this court consolidated these appeals.

27

## I. Denials of Canyon View's Motions for Attorney Fees and Costs Under the MRL

Given the absence of an attorney fee agreement between the parties in any of the four actions, Canyon View may only recover attorney fees as permitted by statute. (See Code Civ. Proc., § 1021 ["[e]xcept as attorney's fees are specifically provided for by statute," attorney fees awards must be based on agreement between parties].) The only statutory basis Canyon View identifies for its request is the MRL attorney fee provision, section 798.85. The primary issue in the parties' appellate briefing is whether section 798.85 applies to the four actions.

We first address the issues of statutory interpretation the parties raise, and then apply our interpretation to the disparate facts in Canyon View's four actions.

### A. *Applicability of Section 798.85*

Canyon View first contends that the court erred in concluding that Canyon View's actions did not "arise out of" the MRL, and that Canyon View thus was not entitled to any attorney fees or costs under section 798.85. This presents a purely legal issue, which we review de novo. (*SC Manufactured, supra,* 148 Cal.App.4th at p. 673 [the " ' " 'determination of whether the criteria for an award of attorney fees and costs have been met is a question of law' " ' "]; *MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1397 (*MHC*).)

#### 1. *An action need not involve landlord-tenant issues in order to "arise out of" the MRL*

Section 798.85 is a mandatory attorney fee and costs provision applicable in "any action arising out of the provisions of

28

this chapter [i.e., the MRL]." (§ 798.85.)  The Legislature's choice of the phrase "arising out of"—rather than much broader language such as "relates to"—reflects a decision not to include all disputes that touch on the MRL in any way.  (See *MHC*, *supra*, 125 Cal.App.4th at pp. 1397–1398 [rejecting argument that section 798.85 is broadly worded enough to apply to actions that "relate to" the MRL, such as an action seeking a declaration that the MRL preempted a local rent control ordinance]; *SC Manufactured Homes*, *supra*, 148 Cal.App.4th at pp. 675–676.)  But the Legislature also chose to employ the phrase "this chapter"—that is, the entirety of the MRL—rather than refer only to article 8 of the MRL, which addresses specific violations of the MRL and civil actions based thereon (§§ 798.84, 798.86–798.88), or some other portion or portions of the MRL.  (See *SC Manufactured, supra,* at p. 676 [noting an action may arise under the MRL "even if a complaint does not allege a specific cause of action under the MRL"].)  The MRL not only regulates the mobilehome park management-resident relationship, but also creates rights and duties for mobilehome owners, mobilehome management, lienholders, and third party purchasers, beyond those related to landlord-tenant issues.  (See Factual and Procedural Summary *ante*, part A; *Simandle*, *supra,* 178 Cal.App.4th at p. 1323 ["The MRL . . . is intended to protect management, homeowners, purchasers and park residents"]; *Adamson*, *supra*, 163 Cal.App.3d Supp. at pp. 13–15 [goals of MRL include "enhanc[ing] the availability of financing of mobilehome purchasers" and "protect[ing] the security and ownership interests of the nontenant owner"].)  Thus, we disagree with the trial court's conclusion that an action must involve landlord-tenant issues or the mobilehome park management-resident relationship in order to arise out of the MRL.

29

Rather, an action arises out of the MRL when the "foundation of the case [is] grounded in [any portion of] the MRL." (*SC Manufactured*, *supra*, 148 Cal.App.4th at p. 676.) This is the case where the claims or defenses in the action "directly involv[e] the application of MRL provisions in specific factual contexts addressed by the MRL." (*Id*. at pp. 675–676; *MHC, supra*, 125 Cal.App.4th at pp. 1397–1398; see *SC Manufactured, supra*, at p. 675 ["the underlying case must arise in the context of those relationships and claims addressed by the MRL"].) Put differently, an action arising out of the MRL "includes all proceedings, at least to the time of judgment, which are required to perfect the rights [created by the MRL]." (*Palmer v. Agee* (1978) 87 Cal.App.3d 377, 387 (*Palmer*).)

### 2. *The Lakeview, BONY, and Household actions—but not the Ocwen action—"arise out of" the MRL*

#### a. *The Lakeview, BONY and Household actions*

The Lakeview, BONY, and Household actions satisfy the requirement of "arising out of [the MRL]" as we interpret it. The MRL creates the right of a purchaser at an abandonment or warehouse lien sale to take title "free of any prior interest, including any security interest or lien." (See §§ 798.61, subd. (e)(4), 798.56a, subd. (e)(1) [purchaser at a warehouse lien sale takes "title to the mobilehome . . . whether or not there existed a [lienholder]"].) Canyon View was "required" to sue to "perfect" that right on the facts of the Lakeview, BONY, and Household actions (*Palmer, supra,* 87 Cal.App.3d at p. 387), because the defendants in those actions refused to sufficiently correct recorded documents asserting a security interest in the subject mobilehomes after Canyon View purchased the homes via MRL abandonment or warehouse lien sale

30

proceedings. Such documents are directly at odds with the right the MRL granted Canyon View to take title free of any security interests or liens. Thus, the "foundation" of each of these cases is that the defendant lienholders continued to assert, via documents they refused to cancel or clarify before Canyon View filed suit, security interests the MRL had extinguished. (*SC Manufactured, supra*, 148 Cal.App.4th at p. 679.) Put differently, if Canyon View's abandonment proceedings—a "specific factual context[ ] addressed by the MRL" (*id.* at p. 675; *MHC, supra*, 125 Cal.App.4th at pp. 1397–1398)—complied with MRL requirements, those proceedings extinguished the defendants' interests in the respective mobilehomes. The defendants in the Lakeview, BONY, and Household actions recorded documents that nevertheless continued to assert such interests. Canyon View's actions to remove the cloud such documents created thus "aris[e] out of" the MRL.

Before filing suit, Canyon View asked Lakeview, the BONY respondents, and the Household respondents to remove voluntarily the cloud on Canyon View's title to the respective mobilehomes. In the Lakeview and BONY actions, the defendants refused to take any action at all to correct the offending documents. In the Household action, although U.S. Bank executed a full reconveyance of any interest it held in the deed of trust before Canyon View filed suit, neither Household nor HSBC executed any such document. Yet documents recorded after Canyon View purchased the subject mobilehome asserted that Household and/or an unidentified beneficiary held a beneficial interest in the home. (See Factual and Procedural Summary *ante*, part B.5, at pp. 19–22.) Without some indication that Household (not just U.S. Bank) reconveyed and disclaimed such interest—or that Household had transferred

31

the entirety of its beneficial interest to U.S. Bank[14]—recorded documents asserting that interest clouded Canyon View's title, the U.S. Bank reconveyance notwithstanding.

Thus, in order to enforce the right the MRL guarantees— that a purchaser at an MRL-compliant abandonment or warehouse lien sale receive free and clear title to the mobilehome purchased— Canyon View had no choice but to sue Lakeview, the BONY respondents, and the Household respondents.

### b. *The Ocwen action*

No such need existed to sue the Ocwen respondents to "perfect" any rights Canyon View may have had under the MRL. (See *Palmer, supra,* 87 Cal.App.3d at p. 387.) Prior to Canyon View filing the Ocwen action, the Ocwen respondents offered to file a full reconveyance and quitclaim deed. Such documents would have cleared all clouds based on any interest the Ocwen respondents held or appeared to hold. Further, even if, as Canyon View contends, inconsistencies in the title records may have caused a cloud to continue to exist *after* Ocwen's reconveyance and promised quitclaim deed, Canyon View could not remove any such cloud by suing the Ocwen respondents. Put differently, to the extent that Canyon View was concerned that documents in the public record suggested some entity other than the Ocwen respondents held a beneficial interest under the deed of trust, that other entity—not the Ocwen respondents—was the appropriate party to sue. Thus, because Canyon View did not need to sue the Ocwen respondents to

---

[14] As noted, Household respondents have not identified any support in the record for their counsel's representation at the hearing before this court that Household reconveyed its beneficiary interest to U.S. Bank or when. (See Factual and Procedural Summary *ante*, part B.5, at pp. 21–22 & fn. 11.)

enforce any MRL-based right to free and clear title, the suit cannot constitute an action "arising out of" the MRL.[15]

In its reply brief, Canyon View addresses these arguments by noting that an action to quiet title can be founded on documents creating *perceived* clouds on title that do not legally exist. This argument misses the point. The issue presented on appeal is not whether Canyon View had a colorable basis for bringing a quiet title action against the Ocwen respondents, but rather whether the Ocwen action "arise[s] out of" the MRL and satisfies the section 798.85 requirements for awarding attorney fees and costs. For the reasons discussed above, it does not.

Finally, Canyon View argues that because, in their responsive pleadings, the Ocwen respondents disputed the sufficiency of the notice Ocwen received under the MRL, they cannot be said to have acquiesced to Canyon View holding title free and clear under the MRL. But what the Ocwen respondents argued in defending against Canyon View's lawsuit does not undermine our conclusion that the lawsuit was unnecessary from its inception—particularly given that the Ocwen respondents disputed the validity of notice in the same communications that contained their offers to reconvey and execute a quitclaim deed. The Ocwen respondents' argument that they were not obligated to record these documents and their willingness to nevertheless do so are neither factually nor conceptually inconsistent.

---

[15] Further, to the extent Canyon View argues the suit was necessary because the December 2015 corporate assignment rendered title unclear, this argument fails not only because the assignment was filed before Canyon View purchased the home, but also because, before Canyon View filed suit, the Ocwen respondents offered to expunge that document.

Canyon View further argues that the parties' dispute as to whether the MRL notice provisions were satisfied itself reinforces that the Ocwen action is one requiring the application of the MRL to a particular factual scenario. Had the Ocwen respondents not offered to reconvey the deed of trust and execute a quitclaim deed before Canyon View filed suit, Canyon View's argument might be persuasive. But the record before us reflects that, as of the date Canyon View filed the Ocwen action, the Ocwen respondents were willing to acknowledge in the public record that Canyon View held title to the mobilehome free and clear of any interests they may have otherwise asserted in the home, and that they had already begun taking such steps. An action seeking to remove a cloud on title that the defendants have already agreed to remove is not necessary to effectuate *any* right, including any right Canyon View had under the MRL. As such, it does not arise out of the MRL.

### 3. SC Manufactured *and related case law do not support a contrary result*

In their briefing urging this court to affirm the trial court's denial of attorney fees and costs under the MRL in all actions, respondents rely heavily on *SC Manufactured*. In that case, a mobilehome dealer alleged "a conspiracy by which mobilehome dealers paid kickbacks to park owners and operators for the exclusive right and privilege of marketing and selling their mobilehomes in the parks, thereby restraining trade, preventing competition, increasing the cost of the mobilehomes in those parks, and interfering with plaintiff's contracts and potential contracts" and denying plaintiff "the ability to sell and lease [its] mobilehomes" in "closed" parks affected by the conspiracy. (*SC Manufactured*, *supra*, 148 Cal.App.4th at pp. 667–668.) Although the complaint sought relief based on the UCL and antitrust and contract causes of action, plaintiff alleged that the

34

defendants' conspiratorial conduct also "affected park residents and homeowners" (*id.* at p. 678) and constituted MRL violations in that, for example, the kickback payments constituted fees prohibited by the MRL, and plaintiff's exclusion from parks reflected "withholding of approval by [park operators] of a purchaser of a mobilehome that will remain in the park." (*Id.* at pp. 668–669.)

After obtaining dismissals, some of the defendants in *SC Manufactured* filed motions for attorney fees and costs pursuant to section 798.85. The trial court denied the motions, holding that the plaintiff's claims were " 'related to the MRL' " but did not arise out of the MRL. (*SC Manufactured*, *supra*, 148 Cal.App.4th at pp. 671–672.) On review, the Court of Appeal discussed in detail whether the action was one " 'arising out of' " the MRL. (*Id.* at p. 675.) The court noted that "[t]he MRL regulates the conduct between tenants and landlords—mobilehome homeowners and residents and mobilehome management" (*id.*, at p. 678), and that, although the conspiracy allegedly also impinged on tenants' rights under the MRL, the plaintiff's lawsuit did not seek to address those impingements, but rather harm to competition and the plaintiff's ability to do business. (*Id.* at pp. 678–679.) At base, the lawsuit "sought to protect [plaintiff's] own pocketbook—not the rights of tenants" (*id.* at p. 678), such that the relief the plaintiff requested would only "incidentally prevent harm to park residents and homeowners" that violated the MRL. (*Id.* at p. 679.)

Despite *SC Manufactured*'s apparent focus on the involvement of a landlord-tenant relationship, its reasoning supports our conclusion that the BONY, Lakeview, and Household actions arise out of the MRL, the absence of any landlord-tenant issues notwithstanding. In those actions, Canyon View sought relief necessary to enforce its MRL-guaranteed right to take title to the mobilehomes it purchased via MRL procedures free and

clear of all liens or other interests. (§ 798.61, subd. (e)(4).) Thus, far from incidentally touching on rights protected by the MRL, as in *SC Manufactured*, Canyon View's actions sought to perfect rights *created* by the MRL.

We acknowledge that some language in *SC Manufactured* could imply that an action "arising out of" the MRL must involve landlord-tenant issues. (*See, e.g., SC Manufactured, supra,* 148 Cal.App.4th at pp. 677, 679.) For example, *SC Manufactured* distinguishes *Palmer, supra,* 87 Cal.App.3d 377 and *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943 (*Del Cerro*), in part by noting that, "unlike [in *SC Manufactured*]," those cases awarding section 798.85 attorney fees "involved classic landlord/tenant disputes." (*SC Manufactured, supra,* at p. 679.)

To the extent *SC Manufactured* can be read as requiring that a case involve landlord-tenant issues in order for it to arise out of the MRL, we disagree with it. But the court's analysis in *SC Manufactured* can also be read as consistent with the more nuanced approach to determining whether an action "arises out of" the MRL that we outline above.

First, the court in *SC Manufactured* distinguished the actions in *Palmer* and *Del Cerro* based on the underlying lawsuits in those cases directly requiring application of the MRL—rather than *incidentally involving* MRL violations.[16] (*SC Manufactured,*

---

[16] For example, *SC Manufactured* distinguishes *Palmer* as an unlawful detainer action in which the mobilehome tenant's defense was that park management failed to comply with MRL termination procedures, thereby clearly requiring application of the MRL to resolve the matter. (*SC Manufactured, supra,* 148 Cal.App.4th at p. 679; see also *ibid.* [distinguishing *Del Cerro* as involving a resident's MRL nuisance cause of action against park management].) Similarly, *SC Manufactured* distinguishes

36

*supra*, 148 Cal.App.4th at pp. 677, 679.) The language in *SC Manufactured* focusing on landlord-tenant issues appears in this context, because these cases happen to require application of MRL provisions *that involve landlord-tenant issues.* But *SC Manufactured* does not hold that—nor does it suggest any reason why—an action directly requiring the application of some *other* aspect of the MRL would not likewise be an action finding its "foundation" in the MRL. (*SC Manufactured, supra*, at p. 679.)

In addition, some aspects of the court's analysis in *SC Manufactured* are inconsistent with an interpretation of section 789.85 as excluding from its purview any action that does not directly involve a landlord/tenant dispute. Namely, the court in *SC Manufactured* rejected the defendants' arguments that "the MRL is not limited to the regulation of park residents, park owners, and park management" (*SC Manufactured, supra*, 148 Cal.App.4th at pp. 679–680), based on "the inclusion of other persons and entities" (*id*. at p. 680) in several MRL provisions, such as provisions permitting a real estate broker to "collect commission pursuant to [a] contract between broker and mobilehome park owner." (*Ibid*.; § 798.80, subd. (d).) The court explained that these sections addressing other entities "do not expand the scope of the MRL *to the degree suggested by [the defendants]*"—that is, to the

<hr>

*People v. McKale* (1979) 25 Cal.3d 626 (*McKale*), as involving an action a district attorney brought against mobilehome landlords and managers on behalf of and to protect park residents. (See *SC Manufactured, supra*, at p. 677.) But *McKale* was an action under the UCL relying on MRL violations to satisfy the "unlawful . . . business practice" element of its UCL claim (*McKale, supra*, at pp. 631–632), and thus necessarily "discussed a specific factual situation addressed by the MRL" for that reason as well. (*SC Manufactured, supra*, at p. 677.)

degree that the MRL would reach the action in *SC Manufactured*, which complained of an anti-competitive conspiracy that incidentally encompassed conduct that violated the MRL. (*SC Manufactured*, *supra*, at p. 680, italics added.) The court acknowledged it was possible claims that *do* directly engage such nonlandlord/tenant MRL provisions might arise out of the MRL: "[T]he case before us does not address a situation involving [the] specific regulations [that mention entities other than residents and management]." (*Ibid.*; see also *ibid.* ["Thus, as [an] example[ ], we are not addressing situations involving a broker trying to collect commissions."].)

The Lakeview, BONY, and Household actions all involve precisely such a situation. Specifically, they require application of an MRL section addressing nonlandlord/tenant issues and entities: The guarantee, under section 798.61, subdivision (e)(4) and section 798.56a, subdivision (e)(1), that a purchaser of a mobilehome through an MRL abandonment or warehouse lien sale take title free of any liens or other interests.

Thus, we read *SC Manufactured* and related case law as consistent with our conclusion that an action need not necessarily involve landlord-tenant issues in order to arise out of the MRL, and that the Lakeview, BONY, and Household actions arise out of that law.

### 4. *Canyon View is the prevailing party*

Even if the MRL's attorney fee and costs statute applies to these actions, it only entitles Canyon View to fees to the extent Canyon View is the "prevailing party." (See § 798.85.) The Household respondents and Lakeview acknowledge Canyon View, as the party with judgments in its favor, must be considered the "prevailing party" under section 798.85. The BONY respondents

38

argue that Canyon View is not the prevailing party because Canyon View did not receive a "net economic recovery," and because the BONY respondents never attempted to enforce the rights the judgment extinguished. We disagree. Section 798.85's plain language mandates that the party with a judgment in its favor be deemed the "prevailing party": "A party shall be deemed a prevailing party for the purposes of this section if the judgment is rendered in his or her favor . . . unless the parties otherwise agree in [a] settlement or compromise." (§ 798.85.) The judgments in all actions were clearly in Canyon View's favor, and it is the prevailing party for the purposes of section 798.85.

### B. Garcia *Does Not Prevent the Attorney Fees and Costs Canyon View Sought in the Household Action*

In denying Canyon View's motion for attorney fees and costs in the Household action, the trial court relied not only on its view that the MRL did not apply, but also on *Garcia, supra*, 192 Cal.App.4th 1474. The court found that, although "not directly on point . . . the reasoning and ultimate holding in *Garcia* [we]re still applicable."

*Garcia* held that a "plaintiff who obtains a default judgment by written declaration" is not "entitled to seek statutory attorney fees by means of a postjudgment motion." (*Garcia, supra*, 192 Cal.App.4th at p. 1476.) The trial court found persuasive *Garcia*'s reasoning that "it would be absurd to read [the Code of Civil Procedure] as allowing a party to seek attorney fees by noticed motion after default judgment has been entered, because a case in which a defendant's default has been taken necessarily has no adversarial quality and the defaulted defendant would have no right to participate in the motion." (*Id*. at p. 1479.)

39

This reasoning does not apply to the Household action. In the Household action, the court conducted a hearing and entered judgment "in accordance with the evidence and the law." (See Code Civ. Proc., § 764.010 [prohibiting judgments of default in quiet title actions and requiring a court in a quiet title action to review "evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants"].) The Household respondents had the right to appear at the default prove-up hearing and offer evidence. (See *ibid.*; see also Factual and Procedural Summary *ante*, fn. 13.) Thereafter, pursuant to portions of the judgment allowing Canyon View to seek attorney fees via noticed motion, Household received notice of Canyon View's fee motion and opposed it. Thus, Household—unlike the defendant in *Garcia*—had an express right to continue to participate in a postjudgment motion for fees and did so, giving the proceedings the "adversarial quality" lacking in *Garcia*.

Household urges that *Garcia* stands for the broader proposition that a "case ends when default judgment is entered," such that all relief must be provided for before entry of default. (*Garcia*, *supra*, 192 Cal.App.4th at p. 1479.) But that, too, occurred in the Household action: The judgment provided that Canyon View would be permitted to move for attorney fees. The court cannot later fault Canyon View for doing exactly that.

The trial court thus erred in relying on *Garcia* as an additional basis for denying attorney fees in the Household action.

## C.    *Reasonableness of Attorney Fees*

Because we conclude above that section 798.85 applies to Canyon View's requests for attorney fees and costs in the Lakeview, BONY, and Household actions, and that Canyon View was a prevailing party under section 798.85 in those actions, the trial court was required to calculate and award Canyon View its reasonable attorney fees and costs in those actions.  (§ 798.85 [prevailing party "*shall* be entitled to reasonable attorney's fees and costs" (italics added)]; *Johns v. Retirement Fund Trust* (1981) 117 Cal.App.3d 113, 116 ["determination of the actual and reasonable amount of attorney fees is within the discretion of the superior court"].)  We review such calculations for an abuse of discretion.  (*Ibid.*)

In its orders denying Canyon View's requests for attorney fees and costs under section 798.85, the trial court noted that, even if the actions did arise out of the MRL and section 798.85 applied, no amount of attorney fees was reasonable under the circumstances.

Although a trial court enjoys broad discretion in calculating what amount of fees and costs is reasonable under the circumstances, this discretion does not permit a court to summarily determine, without engaging in an explicit analysis of the specific work performed or fees requested, that *no* attorney fees or costs are appropriate under a mandatory attorney fee provision.  (See *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 476–477 [in determining the "reasonable" amount of fees to be awarded under statute, the trial court must consider specific circumstances and perform a lodestar analysis]; see also *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 1001 [where mandatory attorney fee statute applied, trial court abused its discretion by awarding no fees for discovery proceedings].)

41

Canyon View supported each of its motions with descriptions of the work performed and detailed attorney invoices.  In its orders, the trial court did not take issue with or even address any of the specific tasks outlined in this documentation, the hours spent on them, or the rates charged by Canyon View's attorneys. Rather, it summarily concluded that *any* work on the lawsuit was "unnecessarily incurred," based on the parties' conduct before and after litigation began or, in the Household action, settlement amounts paid by other defendants.  This is not a valid exercise of discretion grounded in the law.  (See *Garcia v. Santana, supra*, 174 Cal.App.4th at pp. 476–477 [where "we are unable to determine whether the court exercised its discretion to balance all of the relevant factors against each other, or whether the determination that the amount to be assessed was zero was the result of such a balance," the trial court failed to exercise discretion, which is " 'itself an abuse of discretion' "]; see also *Kyne v. Kyne* (1946) 74 Cal.App.2d 563, 571 ["To hold that [attorney] services were of no value to [prevailing party on appeal]" where it is undisputed that services were performed "is to disregard both the facts and the law," and denial of attorney fees and costs on appeal on this basis reflected an abuse of discretion.].)

We share the trial court's concerns that the proceedings may have been more extensive than necessary, given that, for example, proceedings in the Lakeview action continued for several months after Lakeview filed a post-litigation reconveyance and quitclaim deed.  Nevertheless, in order to properly assess the reasonableness of the fee amounts requested in light of these concerns, the court needed to examine the specific work described, determine which work was unnecessary or unreasonable, and decline to award fees and costs for that specific work.  (See *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 818–819,

citing *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135–1136 ["[O]ur Supreme Court has held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to be applied in the absence of clear legislative intent to the contrary."].) Simply concluding that *any* work is unreasonable is inconsistent with section 798.85's mandate that, where it applies, the prevailing party "shall" receive attorney fees and costs. The court's summary assessment that any fees or costs incurred in the Lakeview, BONY, and Household actions were unreasonable thus does not provide a basis for affirming the lower court's decision in those cases.[17]

## II. Denial of Costs Under Code of Civil Procedure Section 1032

### A. *Applicable Law and Standard of Review*

Code of Civil Procedure section 1032, subdivision (b), provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Subdivision (a)(4) defines "prevailing party" as "includ[ing] the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (Code Civ. Proc., § 1032, subd. (a)(4).)

Where, as here, none of these situations applies, and where, as here, a "party recovers other than monetary relief," "the 'prevailing party' shall be as determined by the court, and . . . the court, in its discretion, may allow costs or not." (Code Civ. Proc.,

---

[17] Given our conclusion that the Ocwen action did not arise out of the MRL, we need not consider this alternative basis for denying attorney fees in the Ocwen action.

§ 1032, subd. (a)(4).)  Under such circumstances, the court should
" 'exercise its discretion both in determining the prevailing party
and in allowing, denying, or apportioning costs.' " (*Charton v.
Harkey* (2016) 247 Cal.App.4th 730, 738 (*Charton*); *Lincoln v.
Schurgin* (1995) 39 Cal.App.4th 100, 105.)  Costs which may be
awarded to a prevailing party "must be (1) incurred by that party,
whether or not paid; (2) 'reasonably necessary to the conduct
of the litigation rather than merely convenient or beneficial
to its preparation'; and (3) reasonable in amount." (*Charton*,
*supra*, 247 Cal.App.4th at p. 739; see Code Civ. Proc., § 1033.5,
subd. (c)(1)–(3).)

We review the trial court's exercise of its discretion under
Code of Civil Procedure section 1032 for an abuse of discretion.
(*Charton*, *supra*, 247 Cal.App.4th. at p. 739.)  This standard applies
to both "a trial court's determination on which costs are reasonably
necessary and reasonable in amount." (*Ibid*.)

### B.    *Denial of Costs in Ocwen Action*

The trial court's order granting Ocwen's motion to strike
Canyon View's costs relies in part on Code of Civil Procedure
section 761.030, which, in an action to quiet title, modifies Code
of Civil Procedure section 1032's general rule regarding costs.  It
provides that "[i]f the defendant [in a quiet title action] disclaims
in the answer any claim, or suffers judgment to be taken without
answer, the plaintiff shall not recover costs." (Code Civ. Proc.,
§ 761.030, subd. (b).)

Code of Civil Procedure section 761.030 does not apply
directly.  First, Ocwen demurred, rather than answered.  More
importantly, because Ocwen initially argued that deficiencies in
Canyon View's MRL notices meant Canyon View took the property
subject to Ocwen's security interest, Ocwen's demurrer did not

44

"unequivocal[ly]" disclaim interest in the mobilehome.  (See, e.g., *San Mateo Community College Dist. v. Half Moon Bay Limited Partnership* (1998) 65 Cal.App.4th 401, 416–417 [Code of Civil Procedure section 761.030 did not preclude award of costs where defendant's answer contained a "less-than-unequivocal disclaimer" of interest that still "put [the plaintiff] to [its] proof," in that the answer alleged defendants "remained the sole owners of the interests and rights created by the lease"].)

Nevertheless, the spirit and intent of this provision— that a defendant who makes clear its acquiescence to the desired outcome in a quiet title action should not be forced to bear the plaintiff's costs for that action—is directly applicable.  This is exactly what Ocwen did before Canyon View even filed suit:  It recorded a reconveyance and offered to record other documents to perfect Canyon View's title to the home, the very outcome Canyon View sought through its lawsuit.

That the Ocwen action falls so squarely within the spirit of Code of Civil Procedure section 761.030 is a factor the trial court was entitled to consider in determining whether, under Code of Civil Procedure section 1032, subdivision (a)(4), it should exercise its discretion to grant costs.  In choosing not to do so, the court acted " ' "in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Walsh v. Kirby* (1974) 13 Cal.3d 95, 103.)  Accordingly, we find no abuse of discretion.

## C. *Denial of Costs in BONY Action*

We need not address the court's refusal to award costs under Code of Civil Procedure section 1032, subdivision (b) in the BONY action, given our conclusion that Canyon View is entitled to reasonable attorney fees and costs under the MRL in that action. Upon remand, the trial court shall address the extent to which Canyon View should recover its costs under MRL section 798.85.

## DISPOSITION

The court's orders denying Canyon View's motions for attorney fees and costs under the MRL in the Lakeview action, BONY action, and Household action are reversed.  The court's order granting the BONY respondents' motion to strike costs in the BONY action is also reversed.  Upon remand, the trial court shall determine, in a manner consistent with this opinion, the amount of reasonable attorney fees and costs to award Canyon View in each of these three actions.  In all other respects, we affirm.

The Ocwen respondents are to recover their costs on appeal.

Canyon View is to recover its costs on appeal associated with the Lakeview action, BONY action, and Household action.

CERTIFIED FOR PARTIAL PUBLICATION.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.


47